## No. 13,275.

PETERSON *v.* RAWALT ET AL.
(36 P. [2d] 465)

Decided September 17, 1934.

Mr. PAUL L. LITTLER, Messrs. BRYANT & STUBBS, for plaintiff in error.

Messrs. MOYNIHAN, HUGHES & KNOUS, for defendants in error.

*In Department.*

MR. JUSTICE BOUCK delivered the opinion of the court.

THE plaintiff in error, Peter Peterson, was defendant in the district court, where judgment went against him in favor of the defendant in error, Cora K. Rawalt, plaintiff below. The jury's verdict was for $100; but the trial court, on motion of Mrs. Rawalt, set the verdict aside and entered judgment for the full amount claimed by her, something over $600. Peterson is here asking a reversal.

While the judgment under review merely sustains a claim for wages, the background introduced into the liti-

gation discloses a number of complications properly considered in connection with the assignments of error.

Mrs. Rawalt's husband, who was made a party defendant after the action against Peterson was commenced, and who is merely a nominal party to the present proceedings in error, not being concerned in the judgment, had been the owner, publisher and editor of several country newspapers. The vicissitudes of this business led to financial straits. Rawalt found it necessary to mortgage his newspaper plants in favor of one Dorring. In an effort to rid himself of that mortgage and rehabilitate his enterprise, he sought a reorganization of his affairs by increasing the loans he had theretofore negotiated from the plaintiff in error Peterson, who accordingly in September of 1928 satisfied the Dorring mortgage and received from Rawalt a similar encumbrance for $3,200 as security for some or all of the loans. In 1930 Rawalt's finances had come to such a pass that he was unable to continue his publications on his own responsibility. He and Peterson both deemed it advisable to ship the mortgaged property to Montrose and establish a newspaper. The resulting newspaper was "The Western Slope Democrat." Rawalt claimed that Peterson took over the mortgaged property as its owner upon its transfer to Montrose. Peterson acquired in his own name, and added to the plant, a typesetting machine costing nearly $3,300. Rawalt contended that Peterson thenceforth conducted the business as his, with Rawalt as editor and manager. Peterson claimed, on the other hand, that there was no change in the relation of mortgagor and mortgagee, that the newspaper was still Rawalt's, and that Peterson's interest was solely the interest of a mortgagee desiring to have the indebtedness due him paid. Peterson explained various payments made by him for supplies, labor and rent of a building, as expenditures which he made simply for the purpose of preserving his security. Undoubtedly Rawalt constantly harbored the hope that he would eventually realize on what

he called his equity; yet the testimony in the record might reasonably justify the inference that he had definitely transferred the mortgaged property to Peterson, and had abandoned all expectation of getting anything out of the assets except perhaps by way of some miraculous largess on the part of the mortgagee, and as pure gratuity. Rawalt's reverses made it clearly impossible for him to pay even the ordinary and current expenses. The roseate outlook which he had kept for nearly half a century apparently became hopelessly dimmed. Moreover, Peterson was expressly heralded in the newly established newspaper as its owner.

Mrs. Rawalt's work for the newspaper is shown to have included all the machine work, much of the "ad" and job work, all cylinder press feeding, and some job press feeding. It averaged much more than the usual number of working hours and seems to have been entirely effective and satisfactory from every standpoint. Mrs. Rawalt and her husband both testified that Peterson promised her wages at $20 per week, about half the going wages for such work. Peterson denied it, saying the agreement was for payment of those wages out of the income alone.

There was no serious dispute as to the length of time Mrs. Rawalt worked, the controversy being on the respective contentions just mentioned. If Mrs. Rawalt proved her case, Peterson was the responsible operator of The Western Slope Democrat, whether as absolute owner or not, and Mrs. Rawalt was not required to look to the business income for her wages. Then she would be entitled to recover from Peterson something like the sum she claimed. If she did not prove her case, she would not be entitled to recover.

The assignments of error which we deem it necessary to notice are in effect the following: (1) That under no reasonable view of the evidence is it possible to justify the verdict fixing Mrs. Rawalt's damages at $100; (2) that the court had no power to disregard the jury verdict

and enter judgment for the full amount of Mrs. Rawalt's claim ($665.01); (3) that the court's "additional instruction," urging the jury to agree upon a verdict, was unduly coercive and therefore prejudicial error.

The first contention, that the $100 verdict did not correspond with any reasonable view of the evidence, is obviously sound. The verdict found the issues in favor of the plaintiff and assessed the damages at $100. The evidence was conflicting. Under that evidence the jury might reasonably, as it did, find the issues generally in favor of Mrs. Rawalt. Then, again, if it had found the issues generally in favor of Peterson, we could not, in view of the conflict in the evidence, have said that the jury was wrong. But, having found for Mrs. Rawalt, the jury awarded less than one-sixth of the damages to which she would reasonably be entitled if entitled to recover at all. The monetary award which the verdict thus purports to make is so utterly inconsistent with the general finding in Mrs. Rawalt's favor, and so inadequate when such finding was once made, that the verdict as a whole can be explained only on the theory of utter misconception, if not total disregard, of the evidence, and of the law as stated in the instructions. The incongruity is not a mere error of calculation or a mere oversight which could be corrected, nor is it harmless surplusage and so capable of being ignored. This verdict cannot be cut in two and supported as to what one might deem good, while rejected as to what is admittedly bad. It bears all the earmarks of a hasty and illogical determination made in apparent defiance of the concrete facts. It betrays a jury psychology which suggests the possible existence of the vice charged by the third contention above stated and hereafter to be discussed. In brief, there is no evidence, substantial or otherwise, that could be regarded as supporting the verdict under any theory adopted by either party in the trial court. See *Burns-Moore Co. v. Watson*, 45 Colo. 91, 101 Pac. 335. The verdict was fatally defective and erroneous. It was properly set aside.

■■■ We come now to the second contention, namely, that the trial court could not enter an independent and radically different judgment of its own in lieu of the jury verdict it set aside. The power of a nisi prius court to enter a judgment non obstante veredicto does not include the virtual abolition, apparent in this case, of the right to a jury trial. The judge here substituted a sum more than six times the sum awarded by the jury. This would have been proper only if the judge could legally have directed the jury to render a verdict corresponding exactly to the judgment so entered; that is, only in a case where the supporting evidence both as to liability and as to the amount of damages is uncontradicted and unimpeached. Here the evidence was in sharp conflict. The incongruous verdict herein naturally induces the belief that, as to damages if not also to the preliminary and vital question whether there was any liability at all, the verdict was a sheer compromise, and utterly worthless as an index of the jurors' bona fide conclusions, if any they had. When a flagrant and unexplainable underestimate has been committed by a jury, the only fitting remedy is to have a new trial under normal conditions that will make similar confusion unlikely or impossible. So in the case at bar it was reversible error to enter judgment notwithstanding the verdict and then to refuse to grant a new trial.

■■ By the third contention of plaintiff in error, the court's "additional instruction" is attacked as coercive in its nature. Such "instructions," or rather cautions, have been sustained by this court. The practice so approved is to call into the courtroom the members of a jury, who have been deliberating longer than usual without agreeing upon a verdict, and impressing upon them the importance of agreeing if possible. In the case at bar the deliberations are said to have continued without result for about twenty hours. The trial judge, having had the jury conducted into court, addressed them, adopting in large part the remarks which

we found unobjectionable in other cases. See *Sevilla v. People*, 65 Colo. 437, 177 Pac. 135; *Hutchins v. Haffner*, 63 Colo. 365, 167 Pac. 966. The judge added remarks of his own, which need not now be considered. Ordinarily a trial judge is within his rightful province when he urges agreement upon a jury at loggerheads with itself. But this process has its limits. Where, as in the present case, the jurors are evenly divided, three and three, it is a specially delicate matter to importune unanimity when there is no indication of confusion or misapprehension in the minds of the jurors on the law of the case. The concededly incorrect verdict here leads not unnaturally to the inference that the additional "instruction" sent the jurors back to the jury room with a more or less firm resolve on their part to effect an agreement by arbitrary compromise if necessary. Since the case must be reversed for the reasons given in connection with the second contention, we need not decide whether the giving of the particular caution in its elaborated form was in itself prejudicial error.

Judgment reversed and case remanded for a new trial.

MR. JUSTICE BUTLER, sitting for MR. CHIEF JUSTICE ADAMS, and MR. JUSTICE HOLLAND concur.