[No. 30859. Department One. July 28, 1949.]

SUNSET OIL COMPANY, *Respondent,* v. FRED R. VERTNER, *Appellant.*[1]

[1]Reported in 208 P. (2d) 906.

*Cheney & Hutcheson*, for appellant.
*Meier & Murray* and *Brown & Hawkins*, for respondent.

BEALS, J.—At all times herein mentioned, Sunset Oil Company, the plaintiff in this action, has been and is a corporation organized under the laws of the state of California, and authorized to do business in the state of Washington. Sunset Gas & Oil Company is a Washington corporation and a distributor for Sunset Oil Company.

June 9, 1945, Sunset Gas & Oil Company (herein referred to as Sunset Gas or seller) entered into a written "distributor's agreement" with Fred R. Vertner (the defendant herein) and Stanley A. Pemberton, copartners engaged in the business of selling petroleum products and other mer-

chandise in the city of Yakima and vicinity, under the name of Marine Oil Company (referred to in the agreement as "distributor").

By the terms of this contract, the partnership agreed to purchase exclusively from Sunset Gas lubricating oils, gasoline, and other petroleum products for resale within a described area in Yakima county, during the period beginning June 9, 1945, and ending May 31, 1950.

In September, 1945, Mr. Pemberton sold his interest in the partnership to Mr. Vertner, and, in this opinion, we shall refer to Marine Oil Company as Vertner or distributor.

By the agreement above referred to, Vertner agreed to purchase each calendar month during the term of the agreement certain minimum quantities of petroleum products, namely, fifty thousand gallons of gasoline, one hundred gallons of lubricating oils, and fifty gallons of grease, the gasoline to be purchased at a price six and one-half cents per gallon less than the seller's posted retail price. The prices to Vertner of the other products were fixed by standards set forth in the agreement.

By paragraph No. 5 of the contract, in consideration of the seller's covenant to refrain from selling any of its branded products described in the agreement to third parties within the described territory, Vertner agreed not to "handle, directly or indirectly," any petroleum products for sale or distribution within this territory other than those secured from seller, pursuant to the contract.

By paragraph No. 7, Vertner agreed to pay cash for all purchases at the time of delivery, unless otherwise agreed in writing by seller's credit department.

Paragraph No. 8 of the agreement stated that Vertner understood that, pursuant to the provisions of the "Fair Trade Act," the seller had certain rights and privileges relating to resale prices, Vertner agreeing not to sell the products which he purchased from seller at less than the seller's posted service station tank wagon prices,

". . . unless said sales are made at retail, in which event Distributor agrees that he will not sell such products

at less than the posted retail price established by Seller from time to time for the place of resale."

By paragraph No. 9, Vertner also agreed that he would not sell any products purchased from seller to any person, unless the purchaser first agreed not to resell the products at less than the seller's posted retail price at the place of resale.

The seller reserved the right to sell or assign its interest in the contract to a responsible oil company.

Paragraph No. 16 of the agreement reads as follows:

"No waiver by either party hereto of any nonperformance or breach of any covenant or provision of this agreement shall be deemed to be a waiver of any preceding or succeeding breach of the same or any other covenant or provision. All remedies, rights and options accorded herein, or otherwise available to the Seller shall be cumulative, and no one such remedy, right or option shall be exclusive of any other, and the pursuit of any such remedy, right or option shall not be deemed to waive any other or different remedy or relief to which the Seller might otherwise be entitled, either at law or in equity. Distributor waives any claim against Seller as to price, quantity or quality of any delivery of petroleum products hereunder, as well as any claim for damages resulting from any breach of contract on the part of Seller, unless such claim is made by Distributor to Seller in writing within ten (10) days after receipt of said delivery or breach of contract."

Purchases by Vertner were shipped from the seller's plant at Seattle to Yakima by common carrier until December, 1945, after which Vertner transported such purchases by his own truck.

August 22, 1946, Sunset Gas assigned its interest in the contract referred to above to Sunset Oil Company, plaintiff in this action.

By lease or pursuant to "products agreements," Vertner controlled or owned interests in the following gasoline stations: (1) Moxee station in Moxee, Yakima county; (2) a station in Ellensburg, Kittitas county; (3) Curtis Cabin Camp station; (4) Yakima Truck Service station, and (5) a gasoline station, the latter three in the city of Yakima.

By its amended and supplemental complaint, upon which the action was tried, plaintiff pleaded six causes of action, alleging, in its first cause of action, the making of the contract above referred to, the assignment of the contract to plaintiff by Sunset Gas, and the performance thereof by plaintiff; that, during the month of October, 1946, defendant, orally and by a written notice, informed plaintiff of his intention to sell his business; that, at some date thereafter, defendant did sell his business to a person unknown to plaintiff; and that, October 16, 1946, defendant ceased to purchase gasoline and other petroleum products from plaintiff, as he was required to do pursuant to the contract, and thereafter purchased products from others, failing to purchase from plaintiff even the minimum quantity of gasoline he was obligated by the contract to purchase each month. Plaintiff then alleged the profits which it would have realized had defendant performed the contract, and demanded judgment for damages, on account of defendant's breach of the contract, in a sum exceeding sixty-eight thousand dollars.

In its second cause of action, plaintiff repeated certain allegations set forth in its first cause of action, and alleged that, during the month of September, 1945, defendant owned or controlled a service station at Moxee and requested plaintiff to paint that station; that plaintiff complied with the request, at a cost of $165.87, and that the parties hereto entered into a "service station advertising contract" for a term ending March 4, 1948. Plaintiff demanded judgment on its second cause of action for $165.87.

By its third, fourth, fifth, and sixth causes of action, plaintiff made similar claims on account of painting four other service stations owned or operated by defendant, demanding, by each cause of action respectively, judgment for sums ranging from $169.38 to $259.83.

To this complaint, defendant filed a second amended answer and supplemental cross-complaint, denying that he had breached the contract pleaded by plaintiff and denying

that he was indebted to plaintiff upon any cause of action pleaded by plaintiff.

By way of a first affirmative defense, defendant alleged that plaintiff and its predecessor in interest had waived the provisions of the contract with regard to minimum monthly purchases thereunder by defendant, and alleged that, by its conduct, plaintiff was estopped from contending that defendant was required to purchase any minimum amount of products from the plaintiff.

By a second affirmative defense, defendant alleged that, by custom and practice, any liability from defendant to plaintiff on account of the five causes of action set forth in plaintiff's complaint, based upon painting service stations, and so forth, should be limited to the pro rata amount thereof for the remaining unexpired term of each of the agreements.

By his third affirmative defense, defendant alleged that, during the month of August, 1946, plaintiff, through its authorized officers, represented to defendant that plaintiff would not object to a sale of his business by defendant, provided that defendant gave plaintiff seasonable notice of such sale, and that defendant had given plaintiff such notice.

By a fourth affirmative defense, defendant alleged that plaintiff had materially and substantially breached the terms and conditions of the contract as alleged in detail by defendant, and had, without cause, repudiated the contract and refused to make further deliveries thereunder.

By way of a supplemental cross-complaint, defendant alleged that, by plaintiff's refusal to perform the contract, defendant had suffered damage, by reason of loss of profits which he would have made had the contract been performed by plaintiff, in an amount in excess of seventy-two thousand dollars, for which amount defendant demanded judgment against plaintiff.

Plaintiff replied to defendant's affirmative defenses and cross-complaint with denials and affirmative defenses.

The action was tried to the court, sitting with a jury, the jury having returned a verdict in favor of plaintiff in the sum of $669.45.

Defendant moved for judgment in his favor notwithstanding the verdict, which motion was denied by the court, and, in the alternative, moved for a new trial, this latter motion having later been waived by the defendant, as stated in the judgment.

Plaintiff did not move for a new trial, but moved for judgment in its favor notwithstanding the verdict, and, after argument, the court granted this motion, awarding plaintiff judgment against defendant, upon plaintiff's first cause of action, for the sum of $6,845.78. The court also granted plaintiff's motion as to its second to sixth causes of action, both inclusive, awarding judgment for the amounts, respectively, for which plaintiff had demanded judgment.

The court then entered findings of fact and conclusions of law in accordance with its order, granting plaintiff judgment upon its several causes of action as above stated, together with plaintiff's costs as fixed by the court, followed by a judgment in favor of plaintiff and against defendant in the amounts above stated.

From this judgment, defendant has appealed, assigning error (1) upon the overruling of appellant's demurrer to the complaint; (2) upon the trial court's ruling sustaining respondent's demurrer to appellant's first affirmative defense contained in his amended answer; (3) upon the denial of appellant's motion for judgment of dismissal notwithstanding the verdict; (4) upon the trial court's ruling granting respondent's motion for judgment for increased recoveries notwithstanding the verdict; (5) upon the making of eight specified findings of fact by the trial court; (6) upon the making of four specified conclusions of law; (7) upon the entry of judgment in favor of respondent; (8) upon the admission in evidence of an exhibit offered by respondent; (9) upon the court's refusal to enter judgment dismissing the action; and (10) upon the court's refusal to enter judgment in favor of respondent in an amount not exceeding the verdict of the jury, namely, $669.45.

The questions presented upon this appeal are somewhat confused, and extremely complicated.

At the outset, it may be noted that it is not disputed that appellant sold his business January 18, 1947.

We shall consider appellant's contentions in the order in which they are presented in his brief.

■ Appellant first argues that the contract between the parties, referred to above, is void for want of mutuality. The contract was prepared by respondent's assignor and should therefore, generally speaking, be construed in appellant's favor.

We quote the second portion of paragraph No. 5 of the contract:

"In consideration of Seller's agreement not to sell any of the hereinafter described branded products in the above described territory, Distributor agrees to not handle, directly or indirectly, any petroleum products for sale or distribution in said territory other than those secured from Seller under and by the terms of this agreement. Seller, however, reserves the right at its option to solicit orders for the sale and delivery of any of the hereinafter described branded products in the territory of Distributor to any municipal, county, federal or other governmental or public body or agency, or to any common carrier or public utility within the territory afore-described."

Appellant argues that the contract is entirely unilateral, obligating appellant to sell no products other than those purchased from respondent, while respondent is free to sell its products in appellant's territory. Respondent, of course, is holder of the contract by assignment from Sunset Gas, the original seller named therein.

Appellant admits the assignment of the contract to respondent by the original seller, but argues that it nowhere appears that respondent assumed and agreed to perform the terms and conditions of the contract. Appellant contends that, as it does not appear that respondent agreed in writing to carry out the contract, and as the contract, by its terms, was not to be performed within one year, respondent was not obligated by the provisions of the contract, pursuant to Rem. Rev. Stat., § 5825 [P.P.C. § 577-3] (statute of frauds).

■ Assuming, for purposes of argument, that the situation falls within the statute referred to, respondent proceeded to perform the contract during the months of August and September, 1946, by making deliveries to appellant in accordance with the terms of the agreement, and the contract was partially performed by respondent by the sale to appellant of over one hundred sixteen thousand gallons of gasoline pursuant to the contract. *Rowland v. Cook*, 179 Wash. 624, 38 P. (2d) 224, 101 A. L. R. 180; *Foelkner v. Perkins*, 197 Wash. 462, 85 P. (2d) 1095.

■ It may be noted that appellant did not plead the statute of frauds in bar; but, in any event, in view of the record before us, the contract was not void for want of mutuality. The parties confirmed the contract by acting thereunder, and the cases cited by appellant in this connection are not controlling.

Appellant next argues that the contract upon which respondent relies should be held illegal and void under § 1 of the Federal statute referred to as the Sherman Anti-trust Act, and § 3 of the Clayton Act (15 U. S. C. A., §§ 1, 14).

Respondent contends that, upon the record before us, appellant may not at this time present this question.

Appellant pleaded this question by an affirmative defense in his original answer and by way of an affirmative defense in his amended answer, to both of which defenses respondent's demurrers were sustained. Appellant then pleaded over, filing his second amended answer and supplemental cross-complaint.

■ Respondent relies upon the well-known rule that the filing of an amended pleading, after a demurrer to the original pleading has been sustained, amounts to a waiver of any objection to the ruling of the trial court sustaining the demurrer. This is the general rule. However, the question now before us falls within the rule laid down in the case of *Miller v. Sisters of St. Francis*, 5 Wn. (2d) 204, 105 P. (2d) 32, in which we said:

"There is an exception to that rule where a motion to strike has been granted and a demurrer sustained, if there

remains a question of fact in the case, and the one to whom the ruling is adverse does not waive his right to have it reviewed on appeal by pleading over. [Citing cases.]"

In the recent case of *Rathke v. Yakima Valley Grape Growers Ass'n*, 30 Wn. (2d) 486, 192 P. (2d) 349, this court held that a sales contract, void under a Federal statute, was unenforcible.

Upon the record in the case at bar, appellant may present the question of the illegality of the contract under the Federal statutes referred to above.

In connection with the question now under discussion, Rem. Rev. Stat. (Sup.), § 5854-12 [P.P.C. § 989-103] (a portion of the fair trade act), and United States statutes, including those above referred to, may be considered.

■ It is not denied that all products purchased by appellant from respondent were branded or trademarked goods, sold under respondent's name or bearing its labels. In view of the applicable statutes, it appears that the provisions of the contract pursuant to which appellant was operating, which provisions fixed prices, were not void as in contravention of any state or Federal statute. We find in the record no evidence which would support a finding by the jury to the effect that there was, between the parties, any agreement which would be unlawful as involving illegal fixing of prices.

Appellant cites several Federal cases, including *United States v. Socony-Vacuum Oil Co.*, 310 U. S. 150, 84 L. Ed. 1129, 60 S. Ct. 811, and *United States v. Frankfort Distilleries, Inc.*, 324 U. S. 293, 89 L. Ed. 951, 65 S. Ct. 661.

In view of the evidence in the record, the authorities cited by appellant do not support his contention that the contract was illegal for the reasons assigned.

■ Appellant also contends that the contract violates the Federal anti-trust act, because appellant was required to handle only respondent's products.

In the case of *Chicago Board of Trade v. United States*, 246 U. S. 231, 62 L. Ed. 683, 38 S. Ct. 242, Ann. Cas. 1918D, 1207, the supreme court considered many questions per-

tinent to this inquiry, and observed that each case must be decided upon the particular facts shown.

In 36 Am. Jur. 617, § 147, the rule is stated as follows:

"Thus, the issue as to legality or illegality of the disputed contract or combination is ordinarily to be determined in view of the facts of the case. [Citing authorities.]"

The cases cited by appellant in this connection also approve this principle.

Appellant relies upon the opinion of the United States district court in the case of *United States v. Standard Oil Co. of California*, 78 F. Supp. 850, which concerned the validity of exclusive dealing contracts in the oil industry. In the course of the opinion, the court said:

"As I understand the pleadings, and the Government's position at the beginning of the trial, a judgment is sought decreeing that the clause in the contracts which, by its language and actual effect, *as shown by the evidence*, restricts the stations not employe-operated to the sale and use of petroleum products and accessories produced or supplied by Standard is illegal per se. We cannot agree. To the contrary, as we read the cases, exclusiveness of outlet is not, in itself, illegal. It becomes illegal only if it result in a substantial lessening of competition or the creation of monopoly in the line of commerce." (Italics ours.)

Again, the opinion refers to the "proved facts" of the case (p. 853).

The case cited was appealed to the supreme court of the United States, which affirmed the judgment of the district court. *Standard Oil Co. of California v. United States*, 337 U. S. 293, 69 S. Ct. 1051, 93 L. Ed. 1371.

In the case at bar, no evidence was introduced as to any particular facts, save that appellant made purchases under the agreement. The contract between the parties is the only evidence before us which may be considered in connection with the question now under discussion.

We find in the record no basis for holding that the contract between the parties is illegal and void, under the Federal anti-trust acts.

Appellant argues, as stated in his brief:

"It is undisputed that in the latter part of October, 1946, or at least at all times on and after November 1, 1946, on orders of its main office at Los Angeles, *respondent completely repudiated the contract and failed and expressly refused to make any further sales or deliveries to appellant thereunder.*"

The court instructed the jury (instruction No. 11) as follows:

"You are instructed that if one party to a contract commits a material breach of the contract, the other party may refuse to proceed further under the contract and may treat the contract as terminated.

"In this event, the injured party may bring immediate action for the damages he has sustained.

"A material breach of a contract is a breach of a substantial part of a contract, as distinguished from a part of the contract which is immaterial or inconsequential. A breach may be material, even though it does not render performance of the remainder of the contract impossible or impractical."

█ No error is assigned upon this instruction, which is the law of the case, in so far as this appeal is concerned.

█ In the case of *Knight v. Pang*, 32 Wn. (2d) 217, 201 P. (2d) 198, appears the following:

"It is a well-recognized principle of law that, when the sufficiency of the evidence to support a jury's verdict is questioned on appeal, the evidence will be interpreted in support of the verdict rendered."

█ There was evidence before the jury to the effect that, prior to the assignment of the contract by Sunset Gas to respondent, appellant at times had found it difficult to meet the terms of the contract by making the required cash payments for products delivered to him. After the assignment of the contract to respondent, the latter fixed a credit limit, to which appellant objected, whereupon a plan was considered pursuant to which appellant's business would be increased. However, these negotiations had no tangible result.

During the month of August, 1946, appellant purchased from respondent and its predecessor in interest over fifty-

four thousand gallons of gasoline and, in the following month, over sixty-two thousand gallons. During October, 1946, appellant purchased considerable quantities of gasoline and other products from a Yakima dealer, as appears from an exhibit in the case, and, apparently, made no further purchases from respondent. The summons and complaint in this action were served upon appellant during the month of'October, 1946.

November 1, 1946, appellant's tank wagon called at respondent's base in Seattle, but respondent's agent refused to deliver gasoline, stating that future deliveries would be made only on a cash basis.

From the evidence, which was conflicting, the jury was warranted in finding that appellant committed the first breach of the contract.

The trial court did not err in denying appellant's motion for judgment in his favor as a matter of law.

After the jury had returned its verdict, each party moved for a judgment notwithstanding the verdict, appellant arguing that the verdict in respondent's favor was not supported by the evidence, and respondent moving for judgment in its favor for a much larger sum than that allowed by the jury, arguing that such judgment in its favor should be granted upon uncontradicted and undisputed evidence, in connection with which mathematical computations would clearly show that respondent was entitled to judgment for larger amounts.

The court denied appellant's motion and, as above stated, granted respondent's motion and entered findings of fact and conclusions of law in respondent's favor, pursuant to which the judgment appealed from was entered.

The trial court did not entirely disregard the jury's verdict, as, in finding of fact No. 6, appears the following:

"The finding of the jury in favor of the plaintiff establishes the foregoing finding of fact; namely, the defendant materially and substantially breached the contract on or about October 16, 1946."

Both parties having moved for judgment notwithstanding the verdict of the jury, in response to a suggestion from this court the parties filed briefs discussing the question of whether, in view of the motions of the respective parties, the jury's verdict should be given any consideration by this court.

Rule of Practice 23, adopted July 1, 1942, 18 Wn. (2d) 47-a, reads as follows:

"A motion for a directed verdict which is not granted is not a waiver of trial by jury, even though all parties to the action have moved for directed verdicts."

■■■ The foregoing rule does not apply to motions for judgments notwithstanding the verdict of a jury; and, considering the motions made by the respective parties in the case at bar, we are of the opinion that, by their respective motions, the parties did not submit to the court the questions at issue between them for decision as matters of law. We, accordingly, hold that the verdict of the jury should be considered in determining the questions presented upon this appeal.

The verdict returned by the jury was a general verdict, in the sum of $669.45. The case was submitted to the jury March 24, 1948. It appears from the statement of facts that, after the jury had retired to deliberate upon its verdict, each party took exceptions to certain of the court's instructions, and that the court adjourned at 5:30 p. m., March 24, 1948.

The jury returned its verdict, which bears the clerk's stamp, "FILED FOR RECORD 3-24-48." The verdict is general, reading, after the title of the cause:

"We, the Jury in the above entitled cause, find for the Plaintiff and assess the amount of recovery in the sum of Six hundred sixty-nine and 45/100 Dollars ($669.45). [Signed] L. J. Farley, Foreman."

In their respective briefs, the parties refer to a handwritten memorandum, which, it is stated without dispute, by some undisclosed method, appeared with the jury's formal verdict.

In a supplemental transcript, filed by respondent, appears the jury's general verdict and a typewritten document bearing the words " (Notation attached to Verdict)."

Pursuant to our directions, the original verdict has been forwarded to the clerk of this court and is before us. Attached to the general verdict by wire staples is a small piece of paper, containing handwritten letters and figures as follows:

| "Cost | Unexpired Time | Unexpired Value |
|---|---|---|
| 165 | 16/24 | 110.00 |
| 169 | 43/54 | 135.00 |
| 171 | 19/24 | 135.00 |
| 260 | 7/24 | 76.00 |
| 240 | 6/24 | 60.00 |
| | | 516.00 |
| Atty fees | | 50.00 |
| | | 566.00 |
| Gardner Gas to 10/24 | | |
| 10400 gal. gas at .0075 | | 78.00 |
| 5800 stove oil at .00382 | | 22.15 |
| 2000 Diesel .00165 | | 3.30 |
| | | 669.45" |

The paper contains no other words or figures than as above set forth, nor is it anywise referred to in the verdict of the jury. The statement of facts discloses nothing which indicates when the jury returned its verdict, nor does it contain any reference to the handwritten paper.

Respondent contends that this paper writing should be considered in connection with the verdict. How the paper came into the possession of the court or the clerk of the court, we do not know. We have no information as to whether, when the verdict was returned by the jury and handed to the clerk of the court by its foreman, the paper was stapled to the verdict or whether it was so attached later. We do not know that the memorandum was seen or discussed by the jury, nor in what manner or for what purpose the jury used or considered the memorandum, if they did use or consider it. The memorandum itself bears no file mark whatever. The clerk's certificate with the supple-

mental transcript simply states that that transcript "is a true and correct transcript of such pleadings and files" in the case at bar as the clerk had been directed by respondent's attorneys to transmit to the supreme court. The certificate attached to the statement of facts, signed by the trial judge, contains no reference to the verdict.

Even assuming that the handwritten memorandum was delivered to the court by the foreman of the jury, it should, nevertheless, be disregarded as extraneous and superfluous. *Martin v. Nichols*, 110 Wash. 451, 188 Pac. 519; *Pearson v. Arlington Dock Co.*, 111 Wash. 14, 189 Pac. 559; *Lindsey v. Elkins*, 154 Wash. 588, 283 Pac. 447; *Rowe v. Safeway Stores*, 14 Wn. (2d) 363, 128 P. (2d) 293.

It does not appear that the court instructed the jury to make any specific findings upon any particular questions of fact, or to return separate verdicts upon each of the six causes of action pleaded by respondent.

Respondent argues that the handwritten notation should be considered and that the verdict "was in effect a verdict on each cause of action." We do not agree with respondent's contentions upon this point. The verdict, as returned, is a general verdict.

The trial court might have submitted the case to the jury for a separate verdict on each cause of action, but was not required to do so. *Yamamoto v. Puget Sound Lbr. Co.*, 84 Wash. 411, 146 Pac. 861; *Olympia Water Works v. Mottman*, 88 Wash. 694, 153 Pac. 1074; 53 Am. Jur. 721, § 1043.

The record contains evidence which, if believed by the jury, was, in law, sufficient to support a verdict in respondent's favor for some amount, upon each of the six causes of action pleaded by respondent, provided that the jury was of the opinion that, in consideration of all the evidence before it, the preponderance thereof was in respondent's favor. However, if, in the opinion of the jury, respondent was entitled to recover upon any or all of these causes of action, the amount or amounts to which respondent was entitled remained for the jury to determine, upon consideration of all of the evidence introduced.

As above stated, the trial court accepted the jury's finding that appellant was indebted to respondent, and denied appellant's motion for judgment in his favor notwithstanding the verdict. The question to be here determined is whether the trial court, having so far sustained the verdict of the jury, was authorized by the evidence to enter judgment in favor of respondent in an increased amount, notwithstanding the verdict rendered by the jury.

A motion by a party to an action for judgment in his favor in a larger amount than that which a jury has fixed, is a motion for a judgment notwithstanding the verdict. 3 Bancroft's Code Pleading, Practice and Remedies (Ten-year Supp.) 2267, § 1772; *De Boer v. Olmsted*, 82 Colo. 369, 260 Pac. 108.

In the case of *Fargo Loan Agency v. Larson*, 53 N. D. 621, 207 N. W. 1003, an action by the plaintiff for the conversion of wheat, the jury returned a verdict in favor of the plaintiff for $43.43, whereupon the plaintiff moved for judgment for a larger amount notwithstanding the jury's verdict. The trial court granted the motion and entered judgment in favor of plaintiff in the amount of $406.08, from which judgment the defendants appealed. In the course of the opinion, the court quoted from the opinion of the supreme court of North Dakota in the case of *Sheffield v. Stone, Ordean, Wells Co.*, 49 N. D. 142, 190 N. W. 315, the following:

" 'Judgment notwithstanding the verdict may be ordered only in a case where it clearly appears from the whole record that the party who moves for such judgment is entitled to a judgment on the merits as a matter of law.' "

In the case cited, the court held that certain facts were "either admitted by the defendants or are not contradicted by substantial evidence in the case," and that the plaintiff, as matter of law, was entitled to judgment in a sum in excess of the amount in the verdict of the jury. The court continued:

"Nor can it be said from the record in the case that there is a reasonable probability that a different result would be reached should a new trial be granted."

· The court held that the judgment entered by the trial court was too large, and directed the entry of judgment in an amount less than that entered by the trial court, but somewhat in excess of the jury's verdict.

The supreme court of Colorado, in the case of *De Boer v. Olmsted,* 82 Colo. 369, 260 Pac. 108, held that the trial judge had erred in substituting "his own judgment for that of the jury," and in determining that plaintiff before the trial court was entitled to recover an increased amount. The court observed that the evidence was conflicting and directed that the judgment be reduced to the amount of the verdict returned by the jury.

In the case of *Peterson v. Rawalt,* 95 Colo. 368, 36 P. (2d) 465, it appeared that, based upon conflicting testimony, the jury had entered a verdict for one hundred dollars in favor of the plaintiff, the amount of the verdict, apparently, not being based upon any evidence introduced by either party to the action. On plaintiff's motion, the trial court set the verdict aside and entered judgment for over six hundred dollars, the full amount claimed by the plaintiff. . The judgment was reversed. In the course of the opinion, the court said:

"We come now to the second contention, namely, that the trial court could not enter an independent and radically different judgment of its own in lieu of the jury verdict it set aside. The power of a nisi prius court to enter a judgment non obstante veredicto does not include the virtual abolition, apparent in this case, of the right to a jury trial. The judge here substituted a sum more than six times the sum awarded by the jury. This would have been proper only if the judge could legally have directed the jury to render a verdict corresponding exactly to the judgment so entered; that is, only in a case where the supporting evidence both as to liability and as to the amount of damages is uncontradicted and unimpeached. Here the evidence was in sharp conflict. The incongruous verdict herein naturally induces the belief that, as to damages if not also to the preliminary and vital question whether there was any liability at all, the verdict was a sheer compromise, and utterly worthless as an index of the jurors' bona fide conclusions, if any they had. When a flagrant and unexplainable underestimate has been com-

mitted by a jury, the only fitting remedy is to have a new trial under normal conditions that will make similar confusion unlikely or impossible. So in the case at bar it was reversible error to enter judgment notwithstanding the verdict and then to refuse to grant a new trial."

Respondent relies upon the opinion of this court in the case of *Rawleigh Co. v. Graham*, 4 Wn. (2d) 407, 103 P. (2d) 1076, 129 A. L. R. 596, in which this court, sitting *En Banc*, affirmed a judgment entered upon findings of fact entered by the trial court in favor of the plaintiff, notwithstanding a verdict rendered by the jury in favor of the defendant. After the rendition of the jury's verdict, the plaintiff moved for judgment in its favor notwithstanding the verdict or, in the alternative, for a new trial, which former motion was granted. The court then entered findings and conclusions in favor of the plaintiff, followed by the judgment from which the defendant appealed. A majority of this court found "no controversy in the evidence going to the merits of respondent's claim, upon which the jury was entitled to pass." In the course of the opinion, we said:

"It is, of course, the law that if in the opinion of the trial court there is no conflict in the evidence as to the issue of fact to be submitted to the jury, the court may grant a motion for a directed verdict, made at the close of the case, either simply in favor of the defendant, or for a particular amount, in favor of one party, if the undisputed evidence shows such sum to be due, or in favor of one party, the jury to fix the damages. It would seem that, if the supposed issue of fact has been submitted to the jury, the court, upon further consideration after the return of the verdict, and upon a motion for judgment in favor of the losing party notwithstanding the verdict, could not only grant the motion, if convinced that there was no disputed question of fact upon which the jury should pass, but could make findings in support of a money judgment, if, according to the undisputed evidence, the entry of such a judgment was proper. There would seem no good reason why the court may not do after the return of the verdict what it could unquestionably, in another way, do before."

If the court was of the opinion that there was no dispute whatever in the evidence, the question submitted for de-

cision was one for the court to determine as matter of law.

In the case at bar, after the trial court had refused to submit certain questions for the jury's consideration, there remained several disputed questions of fact which the court properly submitted to the jury.

During the trial, appellant vigorously denied any liability whatever to the respondent and contended that, if he was liable in any amount, such liability was very much less than the amounts contended for by respondent.

It is clear that no motion by either party for a directed verdict would have been appropriate, and no such motion was presented.

There having been several disputed questions of fact in the case, which were properly submitted to the jury, and in view of our holding in the case of *Rawleigh Co. v. Graham, supra,* to the effect that a motion for judgment notwithstanding the verdict of a jury is, in essence, the same as a motion for a directed verdict, the trial court would have been warranted in granting respondent's motion for judgment in its favor notwithstanding the verdict only if, assuming appellant's basic liability as found by the jury, the amount of damages to which respondent was entitled was then undisputed.

Evidently, the trial court was of the opinion that, based upon respondent's exhibit No. 18 (an exhaustive compilation prepared on behalf of respondent showing the damages which respondent claimed followed a breach of the contract by appellant, as alleged in respondent's first cause of action), the evidence as to loss of net profits by respondent, resulting from appellant's breach of the contract, was uncontradicted.

Upon the evidence, the question of the amount of damages to which respondent would be entitled was a matter to be submitted to the jury.

It would seem, from the evidence, that the jury might have found that, even though appellant had violated his contract by the purchases he made from other oil companies during the month of October, such acts on his part did not amount to a definite breach of the entire contract which

would support a judgment in respondent's favor for recovery of damages as to the entire balance of the contract. 3 Williston on Sales (Rev. ed.) 251 *et seq.,* §§ 585a, 585b; 17 C. J. S. 973, § 472 *et seq.*

The jury might have found that these breaches of the contract, while rendering appellant liable for damages concerning these particular purchases, did not afford a basis for respondent to treat the contract, considered in its entirety, as broken. 12 Am. Jur. 966, § 389.

Before this court, appellant assigns no error upon any instruction which the court gave to the jury. By its instructions, the trial court explained to the jury the difference between a material breach of the contract, namely, a breach of a substantial part thereof, as distinguished from an immaterial or inconsequential breach of the contract. The jury was not instructed to return separate verdicts as to each cause of action, but returned a general verdict in respondent's favor.

■■■ In connection with its first cause of action, the burden rested upon respondent to prove definitely and within a reasonable degree of certainty, probability, and accuracy, the damages which it sought to recover. *Quist v. Zerr,* 12 Wn. (2d) 21, 120 P. (2d) 539; *Hole v. Unity Petroleum Corp.,* 15 Wn. (2d) 416, 131 P. (2d) 150.

In the case of *Pappas v. Zerwoodis,* 21 Wn. (2d) 725, 153 P. (2d) 170, an action by a tenant against his landlord to recover loss of profits for breach of certain of the landlord's covenants, we said:

"In such case, however, the loss must be shown with a reasonable degree of certainty and accuracy, and the proof establishing the loss must be clear and convincing, free from speculation or conjecture."

The court instructed the jury as to the rights of the parties to this action in regard to their respective claims. Based upon evidence in the record, the jury, if it determined that respondent was entitled to recovery in the action, could have returned any verdict within the issues as defined by the court in its instructions.

■ Generally speaking, a motion for judgment notwithstanding the verdict is not the proper method by which an arbitrary or unreasonable verdict may be attacked. Such a situation should be met by a motion for new trial; but, in the case at bar, no such motion was made by respondent. The amount of the recovery in respondent's favor, as fixed by the jury, is within the issues presented by the pleadings and the court's instructions. Each party to the action claimed large damages against the other. As far as the record shows, the members of the jury all agreed with the verdict rendered.

■ It is true, as argued by respondent, that, in case of a breach by the purchaser of a contract for the future sale of merchandise, damages may be recovered for loss of profits. Respondent also admits that "such profits must be shown with reasonable certainty but need not be computed with mathematical accuracy."

This court has upheld judgments for damages for loss of profits occasioned by a breach of contract, in cases in which the causes of action concerned different branches of the petroleum industry.

The question before us for decision is whether, upon the record, the trial judge was justified in setting aside the general verdict of the jury, and was authorized to enter judgment in respondent's favor, as matter of law, for a different and larger amount.

A somewhat similar question was considered by this court in the case of *McClure v. Wilson,* 109 Wash. 166, 186 Pac. 302, 18 A. L. R. 1421, a tort action, in which it was held that the trial court had erred in granting the defendants' (respondents here) motion for a judgment in their favor notwithstanding the jury's verdict in favor of the plaintiff.

The record in the case at bar is voluminous, the statement of facts comprising approximately six hundred pages of testimony, and about forty-five exhibits having been introduced in evidence.

■ Examination of the extensive record convinces us that the questions presented were properly for the jury to

determine, and that the trial court erred in granting respondent's motion for judgment in its favor notwithstanding the verdict.

The judgment appealed from is reversed, with instructions to enter judgment in respondent's favor for the amount which the jury, by its verdict, found that respondent was entitled to recover.

JEFFERS, C. J., STEINERT, MALLERY, and HILL, JJ., concur.

