No. 23931.

Walter S. Lowe and Vincent White $v$. The People of the State of Colorado.

(488 P.2d 559)

Decided September 13, 1971.

Myrick, Branney, Frickey and Criswell, William E. Myrick, Henry Blickhahn, for plaintiffs in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Michael T. Haley, Assistant, for defendant in error.

*In Department.*

Opinion by William M. Ela, District Judge.*

Defendants Lowe and White were tried before a jury and convicted of second-degree burglary and larceny of goods of value over $100. The issue we consider on appeal is whether there was improper coercion of the jury by the comments of the trial judge. The jury had deliberated four hours when the jury was brought into the

courtroom. The following dialogue occurred between the jury foreman and the judge:

"BY THE COURT: Mr. Wood, the bailiff reports that you are deadlocked.

"BY MR. WOOD: That is true, sir.

"BY THE COURT: Do you feel you are hopelessly deadlocked?

"BY MR. WOOD: We have been unable to resolve the differences that exist in the minds of the jury after considerable discussion and half a dozen votes, sir.

"BY THE COURT: Without indicating how many are for acquittal and how may are for conviction, how does the jury stand at this time?

"BY MR. WOOD: The preponderance of the vote has been toward guilty.

"BY THE COURT: Don't tell me what for. Just tell me eleven to one or five to six, not which for.

"BY MR. WOOD: The last tally was eleven to one.

"BY THE COURT: Well, you have only deliberated a little over four hours, haven't you?

"BY MR. WOOD: That's right.

"BY THE COURT: Do you think there's any possibility that you might reach a verdict if you continue your deliberations?

"BY MR. WOOD: My opinion is that if such a verdict is reached, it will be as a result of at least one juror having a change of mind that is not based upon true feeling and belief.

"BY THE COURT: Of course, fundamentally I think that's how juries finally reach verdicts.

"BY MR. WOOD: Well, I have no doubt it is, but at the same time when one expresses — as has been done — what is in that one's mind a firm feeling of reasonable doubt. And having been through the discussion a considerable number of times and coming along each and every time with the same feeling, I just don't know four more hours of deliberation will make a material change in that individual's mind. I doubt that it would.

"I'm inclined to think further that if the person does have a change of mind, it will not be a sincere, conscientious one from what has been said.

"We are not trying to foresake our duty, sir.

"BY THE COURT: I'm sure of that. It's just a thing that disturbs me, when you are only one away from a verdict to throw up your hands and quit at this time.

"BY MR. WOOD: Well, sir, we didn't throw up our hands. We just asked what we should do.

"BY THE COURT: I know that, but that's what it amounts to, whether we should try some more.

"I think I am going to suggest that you deliberate a while longer and then we will reconsider it after a while.

"Therefore, you may return for further deliberation." Counsel was given no advance exposure to the intended remarks of the trial judge. The jury again retired and the objections of defense counsel to the remarks of the trial judge were heard in chambers and overruled. The jury returned verdicts of guilty about 50 minutes later. Motions for new trial considered this issue and were overruled.

We conclude that the verdict ran undue risk of being coerced and reverse the rulings of the trial court.

 An examination of the basic premises governing jury deadlocks is in order. It is the general rule that on a disagreement of the jury, the court cannot either expressly or impliedly authorize the jurors to render a compromise verdict. That is, the court cannot authorize a verdict which is reached by some members of the jury sacrificing their conscientious opinions merely for the sake of reaching an agreement. *See* 85 A.L.R. 1439.

A summation of desirable efforts of appellate courts to protect each individual juror's judgment and honest conviction is represented by the American Bar Association's *Minimum Standards for Criminal Justice* "Trial by Jury," Approved Draft 1968, section 5.4 at page 145. The recommended instruction to the jury there tells each juror to try to reach an agreement, ". . . if it can be done

without violence to individual judgment." Further, each juror is told not to, ". . . surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict." The Allen charge (known humorously, but with some merit, as the dynamite, purgative, cathartic, or thirteenth charge) represents the usual step taken by trial courts to break a deadlock. The Allen charge has long been approved by this court as in *Blash v. People,* 162 Colo. 484, 426 P.2d 966 (1967) and its many predecessors. This court has also criticized the Allen charge on certain sets of facts, *Nieto v. People,* 160 Colo. 179, 415 P.2d 531 (1966) and condemned it in others, *Mogan v. People,* 157 Colo. 395, 402 P.2d 928 (1965). It is noteworthy that its use is not approved in the ABA *Minimum Standards for Criminal Justice, supra,* page 146 and page 149, *et seq.* The recommended instruction as a substitute is referred to above in said section 5.4 of "Trial by Jury."

This court has previously approved the principle that each juror is entitled to his honest convictions in *Holland v. People,* 30 Colo. 94, 69 P. 519 (1902). Likewise, the approved remarks of a trial court which were said to avoid the impression to any juror that he should surrender his conscientious convictions to secure an agreement are set forth in *Hutchins v. Haffner,* 63 Colo. 365, 167 P. 966 (1917). Especially appropriate is *Peterson v. Rawalt,* 95 Colo. 368, 36 P.2d 465 (1934), where, as in the case at bar, there is no indication of confusion or misapprehension in the minds of the jurors on the law of the case. Remarks to the jury must have limits. The verdict in *Peterson* demonstrated in a way not possible in the case at bar that the jury reached an improper compromise.

It is better practice to not ask a jury numerically how they are divided but rather to make inquiry as to whether any progress has been made toward reaching an agreement and what the likelihood is for such future

progress. Also, the judge should, as the trial judge recognized here, try to carefully avoid any disclosure as to whether the divided jury is for conviction or acquittal.

 We conclude that the total effect of the answers to the foreman can only be interpreted as an improper direction to the jury that, to reach a verdict, a deadlocked jury may finally base its conclusions on something other than their true beliefs and feelings. At least, the trial judge condoned acceptance of verdicts based on untrue beliefs of part of the jurors. This is not and should not be the law. The probable result here was to bring all the eleven jurors' efforts to bear on the one juror to act against his true beliefs and to abandon a sincere conscientious position.

 If the holdout juror is represented by the foreman as having a sincere conscientious position which cannot be changed, the jury cannot be asked to deliberate further to solve the problem of being only one vote away from a verdict. Asking them to do so is to coerce the one juror into a compromise verdict. The jurors should be given the assurance that their verdict would still have to be based upon the judgment of the jurors from the evidence without compromise of a sincere conscientious position.

The defendants sought and the court denied a change of venue. The record before us does not contain the voir dire examination of the jury, so it is not possible for this court to review the issue. We note, however, that the defendants did not exhaust their preemptory challenges. Inasmuch as this cause must be reversed because of the prejudicial remarks of the trial judge, we deem it unnecessary to consider the other assignments of error.

Judgment reversed and cause remanded for new trial.

MR. JUSTICE KELLEY, MR. JUSTICE ERICKSON, and WILLIAM S. EAKES, District Judge*, concur.

---

*District Judge sitting under assignment by the Chief Justice under provisions of article VI, section 5(3) of the constitution of Colorado.