David L. FORD, guardian of the Estate of Wendy Marie Ford, a minor, and Ford Farms, Inc., a Colorado corporation, Plaintiffs-Appellees,

v.

The BOARD OF COUNTY COMMISSIONERS OF SAGUACHE COUNTY, Colorado, Defendant-Appellant.

No. 81CA0080.

Colorado Court of Appeals, Div. II.

July 14, 1983.

Rehearing Denied Aug. 18, 1983.

Certiorari Granted Jan. 23, 1984.

Certiorari Dismissed on Motion of the Parties Feb. 6, 1984.

Plaut & Lipstein, P.C., Frank Plaut, Lakewood, William R. Bartlett, Monte Vista, for plaintiffs-appellees.

Melat & Wheeler, Jeffrey R. Wheeler, Colorado Springs, Robert Crites, Monte Vista, for defendant-appellant.

TURSI, Judge.

In this wrongful death action, the Board of County Commissioners of Saguache County (County), assigning numerous contentions of error, appeals the jury's award of damages to Ford Farms, Inc., and to David Ford as guardian for the estate of Wendy Marie Ford, the minor daughter of Kenneth Ford. Kenneth was killed when

his Ford Farms vehicle collided with a County-owned vehicle driven by a County employee. The jury found in favor of the Fords and determined that of the total combined negligence, 89.5% was chargeable to the County. Judgment was entered on behalf of Wendy for $374,060, plus interest and costs, and in favor of Ford Farms, Inc., for damage to its vehicle totalling $3669.50, plus interest and costs. We affirm.

At the time of his death, Kenneth was 32 years of age and was associated with his father and two brothers in the operation of Ford Farms, Inc., which supplied him with housing and a vehicle, as well as a salary of over $25,000 a year. He was also associated with two brothers in Ford Brothers, a potato packing and shipping business. Kenneth had been divorced from Wendy's mother, and Wendy was his sole heir and the sole beneficiary under his will.

### I

■ The County first claims that the trial court erred in admitting evidence concerning values attached to the two businesses because it necessarily contained a reflection of gain or profit derived from the use of employed labor and from the appreciation of invested capital. We do not agree that a decedent's ability to accumulate wealth by use of employed labor and capital is irrelevant when a material part of the heir's net pecuniary loss is based on the loss of increase in her anticipated inheritance. See Good v. A.B. Chance Co., 39 Colo.App. 70, 565 P.2d 217 (1977); see also S. Speiser, Recovery for Wrongful Death, §§ 3:32–3:35 (1966). Further, plaintiffs' expert witness testified that he had excluded gain from employed labor and capital in arriving at Wendy's net loss as reduced to present value. The County's other objections to the evidence go to the question of credibility and weight. These are matters which were properly left to the jury under appropriate instructions, and the jury's treatment of them is binding upon appeal.

### II

■ The County also claims that the court improperly admitted evidence of Ken-

neth's loss of earning capacity in Ford Brothers, Inc., because that business could show no profit history. Again, we disagree.

Although the business did not show a distributed profit in its two years of operation prior to Kenneth's death, there was uncontradicted evidence of a substantial increase in the value of Kenneth's share in the company during that period. In addition, testimony from an expert familiar with the Ford operation indicated that a business in that community experiencing the type of management and growth experienced by Ford Brothers would succeed and profit. The estimates and opinions presented were sufficiently grounded in fact to be admissible and probative on the issue of Kenneth's earning capacity. The weight to be given such testimony was for the jury. Nevin v. Bates, 141 Colo. 255, 347 P.2d 776 (1959); Murphy v. Colorado Aviation, Inc., 41 Colo.App. 237, 588 P.2d 877 (1978); Good v. A.B. Chance Co., supra.

### III

■ The County next claims that numerous income tax returns and supporting documents for Ford Farms and Kenneth Ford, which were relevant to the issue of net pecuniary loss, were erroneously admitted. We disagree.

The Ford Farm's returns were prepared by private accountants employed by Ford Farms and were introduced by William Ford, an officer and shareholder in Ford Farms. He testified that he had compiled the company financial documents upon which the tax returns were based. Because documents made by a person with knowledge or from information from one with knowledge are admissible under CRE 803(6), we find no error in their admission. Herman v. Steamboat Springs Super 8 Motel, 634 P.2d 1005 (Colo.App.1981).

Kenneth Ford's tax records—unsigned copies of the tax returns, supplemented by W–2 forms for years when tax returns

were not available—were retrieved from his personal files and from the records of Ford Farms. The documents were presented by his brother David, the administrator of his estate and custodian of those records, and while David was not involved in preparing the returns, the County has not shown anything about their preparation, storage, or discovery to be untrustworthy. CRE 803(6); *Murphy v. Colo. Aviation, supra; Good v. A.B. Chance Co., supra.* Further, these personal tax returns are, in effect, summaries of earnings reflected in Ford Farms business records.

## IV

The County further contends that the court erred by prohibiting introduction of testimony concerning Kenneth's probable remarriage. The court ruled the proffered evidence was too speculative to be material on the issue of what Wendy Ford might reasonably have expected to receive from her father.

At an *in camera* hearing, the County's witness stated that she had known Kenneth for 18 days prior to his death, and that in a general conversation he stated that he would marry again *if* he met the right person in the next five years. The witness conceded on cross-examination that she could only guess whether Kenneth in fact would have remarried had he lived.

■ Citing *Mutual Life Insurance v. Hillmon*, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892) and *Morrison v. Bradley*, 655 P.2d 385 (Colo.1982), the County argues that the statement was admissible as a declaration of Kenneth's then existing state of mind. However, relevance is the threshold standard which all evidentiary offerings, hearsay or otherwise, must meet. *People v. Madson*, 638 P.2d 18 (Colo.1981). The trial court in its discretion must determine whether the evidence would tend to make the existence of a fact in issue more or less probable. *See Bush v. Jackson*, 191 Colo. 249, 552 P.2d 509, (1976); CRE 402, 403.

■ As damages in wrongful death actions are fixed as of the date of death, so are the proper party plaintiffs. By County's proffered testimony, it tried to diminish the loss suffered by Wendy, the sole heir and beneficiary, by a speculative possible additional claimant who did not exist at the time of Kenneth's death. Since Kenneth had not remarried prior to his death, the possibility that there might have been additional claimants, is irrelevant. *Cf. Barnhill v. Public Service Co.*, 649 P.2d 716 (Colo.App.1982).

## V

We reject the County's claim that the court erred in refusing to instruct the jury that the damage award would not be subject to income taxes.

■ Colorado law does not require a court to so instruct the jury. *Davis v. Fortino & Jackson Chevrolet Co.*, 32 Colo. App. 222, 510 P.2d 1376 (1973).

## VI

■ We also perceive no abuse of discretion in the court's giving the standard deadlock instruction, *Colo.* J.I. 4:3 (2d ed. 1980), after the jury informed the court of its inability to agree on the total amount of plaintiffs' damages.

The case was submitted to the jury after a four day trial characterized by complicated expert testimony on the damages issue. After six hours of deliberations, the jurors sent a signed note to the court indicating that they could never agree on the dollar amount of plaintiffs' damages. Before the jury was recalled, the court heard counsel's arguments on the appropriateness of issuing the deadlock instruction. When the court recalled the jury, it made several inquiries, concluded that there was a reasonable probability of agreement, and gave the instruction.

The instruction and remarks of the trial court do not amount to coercion or an attempt to coerce a compromise verdict. *Lowe v. People*, 175 Colo. 491, 488 P.2d 559 (1971); *Hutchins v. Haffner*, 63 Colo. 365,

167 P. 966 (1917). The record indicates that the trial court responded to the deadlock with caution and patience appropriate to the circumstances. *Mogan v. People,* 157 Colo. 395, 402 P.2d 928 (1965); *Peterson v. Rawalt,* 95 Colo. 368, 36 P.2d 465 (1934).

## VII

The County also challenges the jury findings of liability based on the evidence and certain objected to instructions. We have reviewed the record and find these contentions to be without merit.

## VIII

The County finally challenges the assessment against it of additional docket fees pursuant to § 13–32–101(4)(a), C.R.S. 1973. While the assessment may have been premature in this matter, we agree with the trial court that such additional fees when incurred may be assessed as an additional cost award to a prevailing party. Section 13–16–104, C.R.S.1973. We therefore hold that the assessment of these fees as part of the costs recoverable by the Fords must be vacated at this time, subject to reassessment if actually incurred.

The County's remaining contentions are without merit.

The judgment is affirmed in all respects except as to the assessment of additional docket fees, which portion of the judgment is vacated.

PIERCE and SMITH, JJ., concur.