## STATE v. CARABAJAL.

[No. 2428.   Oct. 5, 1920.]

### SYLLABUS BY THE COURT.

1.   The error of the district court in sustaining an objection to a question asked for the purpose of laying the foundation for impeachment is not available to the appellant, when as a matter of fact he is permitted to prove that the witness did make the contradictory statement called for in the question.

P. 386

2.   The statement by the district court that he fails to see the materiality of a question · asked by the witness is not a comment upon the weight of the evidence, but is a mere statement of a legal objection to the testimony, and is unobjectionable.      P. 388

3.   The trial judge has the power in his sound judicial dis-

cretion to vary the order of proof, and his action is not reviewable, except for gross abuse of discretion.         P. 388

4. Where the appellant was convicted of involuntary manslaughter, he cannot make complaint of error in the instructions of the court in regard to murder.         P. 392

5. An exception to an instruction, to the effect that the same is not a full and complete statement of the law, is indefinite, and presents no question for review in this court.
P. 392

6. An instruction upon manslaughter which omits to express to the jury that the killing must be without malice is not harmful, but, on the other hand, beneficial to the defendant, and he has no complaint thereon in this court.   P. 394

7. Instructions Nos. 10 and 14 examined, and held not to be in conflict with or repugnant to each other.         P. 394

8-11. The district court is not bound to give instructions which, even if correct, are merely cumulative, and state in another form a proposition of law already given to the jury.
P. 395, 396

12. An instruction which merely lacks scientific form, while in substance it covers the matter fully, is not objectionable; and, even if the same is not directly applicable to the facts in the case, where by no possibility it could mislead the jury, the giving of the same is harmless and not available as error.         P. 397

13. The jury returned a verdict of involuntary manslaughter, and voluntary and without any instruction from the court upon the subject appended thereto the following: "We respectfully beg the mercy of the court." It is held that section 4447, Code 1915, which authorizes such a recommendation, has the effect merely of allowing the jury to give the trial judge the benefit of their opinion as to whether clemency should be extended, and is not intended to in any manner control the ultimate discretion of the trial judge in fixing the sentence.         P. 398

Appeal from District Court, Otero County; Edwin Mechem, Judge.

Marcelino Carabajal was convicted of involuntary manslaughter, and he appeals. Affirmed.

HOLT & SUTHERLAND, of Las Cruces, for appellant.

O. O. ASKREN, Atty. Gen., and N. D. MEYER, Asst. Atty. Gen., for the State.

OPINION OF THE COURT.

PARKER, C. J. The appellant was tried upon an indictment charging murder, and was convicted of in-

voluntary manslaughter. He was sentenced to imprisonment for a period of not less than 9 nor more than 10 years, from which judgment this appeal is prosecuted.

The theory of the state was that the appellant shot and killed his wife just as she was entering a house in which her alleged paramour was staying. The claim of the defense was that she entered the house, and that appellant upon entering the house found his wife on a bed with a man, and in an attempt to kill the man he accidentally killed his wife by shooting her. The circumstances were such that the appellant might have invoked the statute (section 1468, Code 1915), which declares that a man may justifiably kill another who is in the act of having carnal knowledge of his wife, with whom he is then living as husband and wife. The jury necessarily refused to follow the theory of the prosecution to the effect that the woman was shot before she entered the house, else they could not have found the appellant guilty of involuntary manslaughter. If she was shot outside of the house, the act must have been intentional. On the other hand the jury must have followed the theory of the defense, to the effect that she had entered the house and was unintentionally killed, but not under circumstances which entirely justified the appellant. In reaching this conclusion some physical facts which tended to show that she was shot before she ever entered the house were disregarded by the jury. However, it was the province of the jury to determine the facts and they have found otherwise.

[1] Previous to the trial most of the witnesses for the prosecution had given testimony in a habeas corpus proceeding brought by appellant to obtain bail. Upon that hearing a witness Bernabe Torres, the supposed paramour, testified. Upon the hearing the witness made statements as to his whereabouts on the Sunday preceding the homicide, and as to appellant visiting his room on said date. The subject-matter of the proof was collateral to the main issue, and in no way reflected upon the merits of the case. Upon the trial the witness was

cross-examined in great detail as to his former testimony, and four questions were propounded to him, which were read from the stenographic report of the habeas corpus proceeding, and objection was interposed to each of these questions and sustained by the court. The proof called for was immaterial, except as it may have reflected upon the fairness or accuracy of the memory of the witness. But the subject-matter of the cross-examination was immaterial. It was not material, under the circumstances, whether the witness was at his room on the Sunday preceding the homicide, or whether the deceased came there and looked in and talked with appellant on that occasion, as no claim was made that the subject of the attentions of the witness to the wife of appellant was mentioned or discussed.

Appellant was allowed to, and did, prove by the reporter who reported the case upon the habeas corpus proceedings, that the witness did give the testimony in question upon that hearing, except as to that mentioned in the last question referred to in the briefs, and in that case the objection was properly sustained, for the reason that the testimony called for did not contradict any testimony given by the witness in the present trial.

We have then a case where the court has erroneously, we may assume, but without so deciding, excluded a question, asked for the purpose of laying a foundation for impeachment, but where the appellant has subsequently shown that the witness did previously testify as shown by the question which was excluded.

A casual view of the reason underlying the rule upon this subject will be sufficient to show that there is no error here of which appellant can complain. The rule is that before proof of previous statements, contrary to the present testimony of the witness, may be shown, the previous statement and the circumstances under which the statement was made, sufficient to identify the occasion, must be called to the attention of the witness. This rule is statutory in this jurisdiction. Section 2178, Code 1915. The object of the requirement is to afford

the witness an opportunity to deny the statement, if he did not make it, or to admit it if he did make it, and to make such explanation of the apparent contradiction as he may have.     Section 5, Chamb. Mod. Law Ev. §§ 3756, 3757; 2 Wig. Ev. §§ 1025, 1035; 5 Jones, Ev. § 846.

The protection furnished by the rule is for the benefit of the witness, not for the parties.   And when, as in this case, the appellant was permitted to show by the reporter of the habeas corpus proceedings the former statement by the witness, without foundation having been laid, it was the witness, if anybody, and not the appellant, who suffered injury.

[2] In connection with the exclusion of the testimony which is referred to, objection is made by appellant to a remark of the court. After one of the question referred to had been asked by counsel for the appellant, the court said, "I fail to see the materiality as to that, asking whether Narcisco was there." Thereupon counsel for appellant stated, "Goes to the credibility of the witness." The question was then repeated and answered by the witness. There is no merit in the contention of counsel that the court undertook to comment upon the weight of the evidence. If the statement by the court was anything, it was a statement of a legal objection to the evidence, viz., lack of materiality. Upon explanation by counsel of the object of the question the witness was allowed to answer. Under such circumstances there is nothing before the court of which the appellant can complain.

[3] Upon rebuttal the state called five witnesses, all of whom were permitted to testify relative to the condition of the deceased in regard to menstruation. These witnesses had all testified in chief, but they did not testify that the woman was menstruating. The witness, Ed Kelly, the undertaker, did testify, upon the case in chief for the state, that he took the body to his undertaking parlors, and there removed all of her clothing,

among which was menstrual pad, which was much soiled from the menstrual flow.

In this connection, it is to be recalled that the theory of the prosecution was that the woman was shot by the husband before she ever entered the room. The theory of the defense, however, was, as before stated, that she had entered the room, and was upon the bed with a man whom the appellant tried to kill by shooting. He justified his act under the statute heretofore mentioned, and claimed accidental killing of his wife. The state justified the introduction of evidence that the woman was menstruating at the time upon the theory that it tends to contradict the appellant and to render improbable his claim that the woman was on the bed with the man in the act of having sexual intercourse with him. In view of all these circumstances, we can see no error in the admission of this testimony. It is true that the testimony would have been admissible in chief as a part of the res gestae, but at that time the fact was of no importance, under the theory of the prosecution. It became material and important after the appellant had attempted to justify on the grounds stated. No attempt was made to contradict this evidence, and no claim is made in the brief of counsel that it could be contradicted. The claim seems to be simply that on account of the character of the testimony, it was highly damaging to the appellant, and made a profound impression upon the minds of the jurors. This may be admitted, but we know of no rule of law which prevents the production of a fact, no matter how damaging, if the same is competent and relevant. Counsel for appellant devoted themselves in the citation of authorities to cases and texts forbidding the introduction of evidence in rebuttal which has been improperly suppressed when the case in chief was developed before the jury. Of course, in such cases the courts will not tolerate its introduction in rebuttal. There is nothing of this kind apparent in this case. It was not, during the progress of the case in chief material to show that the woman was

menstruating if, as claimed by the prosecution, she was shot down before she ever entered the room.

In this connection it is to be further noted that appellant was convicted of involuntary manslaughter. This conclusion could have been reached by the jury only upon the theory the deceased was upon the bed with the man, and that appellant, in attempting to shoot the man, shot his wife. It thus appears that the jury adhered to appellant's theory of the transaction, but convicted on the theory that he did the act without due caution or circumspection. Hence the evidence objected to did not operate to inflame the minds of the jurors and cause them to depart from appellant's theory of the transaction by convicting him of a higher degree of homicide. He was therefore probably not injured by the testimony. But just what effect the testimony had it is impossible to say. It is clear that it did not cause the jury to believe that deceased was shot outside of the door, as claimed by the prosecution, and that the jury believed she was shot accidentally while on the bed with the man is equally clear. But whether the evidence, introduced as it was at the very close of the case, might have caused a conviction, where otherwise an acquittal might have resulted, cannot be determined, although there seems to be no logical or legal reason to so conclude under the circumstances. In discussing the application of the rule, it will be assumed, therefore, that the admission of the evidence was harmful to the appellant.

Theoretically, the rule upon the subject of order of proof is that the proponent, or plaintiff, should first exhaust his entire proof in support of his allegations. The opponent, or defendant, should then be called upon to exhaust his entire proof in denial of proponent's case or in support of his affirmative defense. Thereupon a proponent may, by way of rebuttal, introduce evidence tending to contradict the proofs offered by the opponent. And the opponent then may often bring forward, by way of surrebuttal, facts to overcome the proofs on rebuttal, and so on until the whole field of relevant facts

State v. Carabajal, 26 N. M. 384.

has been covered. In these successive stages of proof the acting party is confined to such evidence as will tend to overcome, modify or explain that of his adversary adduced in the next preceding stages of the proof.

It is apparent, however, to every one who has had experience in legal trials, that in almost every case circumstances arise which disturb the strict enforcement of the procedural rule. The rule, if strictly enforced, may become an instrument of oppression or injustice, instead of one to promote justice, the development of truth, and the due enforcement of the law. Hence the rule has come to be considered a rule of administration or procedure, and not a rule of right upon which a party may insist. It follows that some. one must have the power to vary the order of proof to meet the exigencies of any given trial, to the end that justice may be done, and that power is vested in the trial judge. The proposition, therefore, as it is generally formulated in the text-book and cases, is that the power to vary the natural order of proof rests in the sound judicial discretion of the trial court. In some jurisdictions this discretion is held not to be reviewable. An early New Mexico case is to this effect. Territory v. O'Donnel, 4 N. M. 196, 210, 12 Pac. 743. The great weight of authority, however, is to the effect that the action of the trial court is reviewable for gross abuse of discretion in this regard. Some of the later New Mexico cases assume and some announce this rule. Holthoff v. Freudenthal et al., 22 N. M. 377, 162 Pac. 173; Hodges v. Hodges, 22 N. M. 192, 159 Pac. 1007; State v. Riddle, 23 N. M. 600, 605, 170 Pac. 62; State v. Rodriguez, 23 N. M. 156, 172, 167 Pac. 426, L. R. A. 1918 A, 1016; State v. Cason, 23 N. M. 77, 81, 167 Pac. 283.

The question most frequently arises in criminal cases upon the admissibility of evidence for the state in rebuttal, as in the present case. The rule of judicial discretion is here applied as before stated. A distinction is noted in some cases to the effect that if the evidence tends to rebut the evidence of the defendant, the fact

that it also incidentally strengthens the case in chief for the state, or might have as properly been put in chief, is no ground of objection to it. This would seem to be logical, and is to be justified upon the principle of multiple admissibility. For a general discussion of the proposition of control over the order of proof see 5 Jones on Ev. § 811; 1 Chamb. Mod. Law of Ev. §§ 369, 379; 3 Wig. on Ev. §§ 1867, 1873; Abbott's Trial Brief, Criminal (2d Ed.) p. 308; 16 C. J. § 2185. For a specific application of the doctrine to a case like the present, where there is a double quality to the rebuttal testimony, see Roberts v. State, 2 Boyce (Del.) 385, 79 Atl. 396, Ann. Cas. 1914D, 1266, and extensive note. In this note all the cases are collected and the correctness of our position upon the question is there shown.

It follows that there was no error in the ruling of the court and the appellant cannot here complain of the admission of the evidence.

[4] Appellant complains of various matters in the instructions to the jury. His first proposition is that there was error in the second instruction to the jury, given by the court. This instruction related to the law governing murder in the first degree and, as before pointed out, the appellant was convicted of involuntary manslaughter. It needs no argument or citation of authority to show that in a case of this kind, even assuming that there was error in the instruction relating to murder, the error is obviated by the fact that the appellant was not convicted of murder, but, on the other hand, was convicted of involuntary manslaughter. However, reference may be had to 2 Michie on Homicide, pp. 1831, 1832, for the authority on this proposition.

[5] Appellant complains of instruction No. 14 because it was repugnant to instruction No. 10, and for various other reasons which will appear below.

Instruction No. 14, as given by the court, is as follows:
"He further instructs you that if you believe from all this evidence and beyond a reasonable doubt that at the time of the death of the deceased she was the defendant's legal wife,

and that the defendant and she were at said time living to-
gether as man and wife, and that the defendant found Narciso
Montoya (in the act of having carnal knowledge of his wife,
or found them together in such position as to indicate with
reasonable certainty to a rational mind that they had just
then committed the act of sexual intercourse, or were about
to commit it), and that the defendant in the heat of passion
then and there fired the fatal shot, intending to kill the de-
ceased, then the defendant would be guilty of manslaughter."

Instruction No. 10, as given by the court, is as follows:

"If you believe from the evidence, beyond a reasonable
doubt, that on the 26th day of February 1918, at the county
of Lincoln and in the state of New Mexico, or at any other
time within six years next prior to the 1st day of May, 1919,
the day on which the indictment was returned by the grand
jury in this case, the defendant, Marcelino Carabajal, did
shoot off and discharge a loaded rifle at and towards the said
Lolita Carabajal, thereby inflicting in and upon the body of
the said Lolita Carabajal one mortal wound, of which said
mortal wound the said Lolita Carabajal then and there died,
and that such shooting, wounding, and killing was unlawful
and without malice within the terms of the definitions of 'un-
lawful' and 'malice' as heretofore given you, and that such
shooting, wounding, and killing was upon a sudden quarrel or
in the heat of passion (or was done by the defendant while in
the commission of a lawful act which might produce death,
in an unlawful manner, or without due caution and circum-
spection) and was without excuse or justification, then you
should find the defendant guilty of manslaughter."

Appellant excepted to the fourteenth instruction as
follows:

"Defendant excepts to the fourteenth instruction, given by
the court, as not being a full and complete statement of law.
And because same does not embody the element of the killing
without premeditation and deliberation, and without malice;
and because same is in conflict with an instruction previously
given by the court on the subject of manslaughter, and is re-
pugnant thereto, instruction last referred to being instruc-
tion No. 10."

It is to be noted that the exception to the instruction
contains several different propositions. The first is to
the effect that it is not a full and complete statement of
the law. This form of exception is of no avail for the
reason that it does not call to the attention of the court
the particulars in which the instruction fails to be a
complete statement of the law, so that the court might
then and there correct the instruction and avoid error.

State v. Gonzales, 19 N.. M. 467, 144 Pac. 1144; Territory v. Lobato, 17 N. M. 666, 134 Pac. 222, L. R. A. 1917A, 1226; James v. Hood, 19 N. M. 234, 142 Pac. 162.

[**6**] A further objection to the instruction is embodied in the exception to the effect that the instruction did not embody the element of killing without premediation and deliberation and without malice. A similar objection to an instruction was considered in Territory v. Trapp, 16 N. M. 700, 120 Pac. 702, and it was there held that the cmission with reference to malice in an instruction did not injure the defendant. It was there pointed out the omission of all reference to whether the killing was without malice did not require less of the jury to convince than the law required and on the whole such an omission was beneficial to the defendant, and the inaccuracy in the instruction was not available as error. We are satisfied with the holding in that case, and it is controlling in this upon this point.

[**7**] The last proposition in the exception is to the effect that instruction 14 is in conflict with and repugnant to instruction 10, heretofore quoted. Assuming that the exception would be sufficient to direct the court's attention to any specific conflict between the two instructions, which is very doubtful, we fail to appreciate wherein any such repugnancy exists. Instruction No. 10 applies the law generally to the indictment and the facts in the case. Instruction No. 14 was intended to apply the law to the specific circumstances shown in evidence, and in no particular departs from instruction No. 10, except in its omission of reference to the absence of malice. Instruction No. 10 is a general statement, under the indictment and the facts charged therein, of the law of manslaughter, both voluntary and involuntary; instruction No. 14 is an application by the court of these general statements of the law to the specific facts shown in evidence. In the latter instruction the omission of reference to the presence or absence of malice is, as before seen, an omission in the appellant's favor of which he cannot complain in this court.

[8] Appellant complains of the refusal of the court to give his requested instruction No. 8, as follows:

"You are further instructed that it is your province to determine from the evidence whether or not the fatal shot was fired in the heat of passion, and as to whether or not it was fired upon sudden and sufficient provocation, and if you so believe, and further believe from the evidence that the killing of the deceased was the result of accident and misfortune, without intent upon the part of the defendant to take the life of the deceased, but in a justifiable attempt to slay the witness Montoya, as heretofore explained in these instructions, then you should acquit the defendant."

There was no error in this because the subject was fully covered by the court's instructions Nos. 15, 16, and 17, the latter being the defendant's requested instruction No. 10. It is a familiar rule in this jurisdiction that courts are not bound to give instructions which, even if correct, are merely cumulative, and state in another form a proposition of law already given to the jury. State v. Belisle, 22 N. M., 285, 161 Pac. 168; State v. Dickens, 23 N. M. 26, 165 Pac. 850; State v. Rodriguez, 23 N. M. 156, 167 Pac. 426, L. R. A. 1918A, 1016.

[9] Appellant contends that the court erred in refusing to give his requested instruction No. 9, as follows:

"You are further instructed that if you find from the evidence that the situation as testified to by the defendant existed at the time the fatal shot was fired, and was such as to justify a reasonable and prudent man in believing that the witness, Narciso Montoya, was then and there in the act of having carnal knowledge of defendant's wife, with whom defendant was then living, and that defendant, as a reasonable and prudent man, so believed when he acted, and when the fatal shot was fired, the defendant intended to take the life of the witness Narciso Montoya, and did not intend to slay the deceased, then it will be your duty to return a verdict of not guilty."

The subject-matter of this requested instruction was fully covered by the court's instruction Nos. 13 and 15, with the same disposition as was made of the eighth requested instruction.

[10] Appellant complains of the refusal of the court to give his requested instruction No. 15, as follows:

"The court instructs the jury that if the evidence is reason-

ably consistent with the defendant'e innocence he should be promptly acquitted."

This instruction was erroneous, in that it directed the jury in certain contingencies to ''promptly acquit'' the defendant. The court is not authorized to direct the jury to do anything which it is their duty to do, otherwise than upon due and careful consideration. Even if the instruction, as tendered, was not open to the above objection, the appellant cannot complain of the court's refusal to give the same. Upon this subject appellant made two requests for instructions, Nos. 14 and 15 and No. 14 was given by the court in such form as to fully cover the proposition contended for, namely, that where a man's conduct may as consistently, from the evidence, be referred to one of the two motives, one criminal and the other innocent, it is the duty of the jury to presume that such conduct is actuated by the innocent motive, and not the criminal. The last clause of this tendered instruction was properly stricken out by the court. It was:

"In which event it will be the duty of the jury to acquit the defendant."

It is readily seen that such a statement in such an instruction was highly improper, and its tendency was to confuse rather than clarify the subject in the minds of the jurors. It follows that the appellant is not in a position to complain here of the refusal to give the instruction.

[1   ] Appellant complains of the refusal of the court to give his requested instruction No. 17 as follows:

"You are further instructed that before you can convict the defendant, each of you must be satisfied to a moral certainty and beyond a reasonable doubt, not only that proof is consistent with the defendant's guilt, but that it is wholly inconsistent with every other rational conclusion; and, unless each of you is so convinced by the evidence of the defendant's guilt that you would each venture to act upon that decision in matters of the highest concern and importance to your interest, then you must find the defendant not guilty."

The subject-matter of this instruction was fully cov-

cred by the court's instructions Nos. 23 and 25, and the appellant cannot, therefore, make any complaint here.

[**12**] Appellant complains of the giving by the court of its instruction No. 24, the same being in part as follows:

"You are instructed that the credit of a witness may be impeached by showing that he or she has made statements, either in or out of court, contradictory to and inconsistent with his or her testimony on the trial, concerning matters material or relevant to the issue."

The exception in the court below to this instruction was to the effect, there being no impeachment in the case except by showing that witnesses for the prosecution had previously testified under oath in the habeas corpus proceeding, that the instruction should embody the words "under oath," and that the instruction, as given, which would include the impeachment upon statements made, not under oath, was inapplicable to the facts before the court. It is to be observed that the language used in the instruction is "statements either in or out" of court. It is certainly a matter of common knowledge, of which the jury must necessarily be informed, that statements of witnesses "in court" are necessarily under oath. The addition of the words "under oath" would add nothing to the instruction, and conveys to the jury no additional meaning. The appellant, therefore, is in no position to complain of this instruction, because, at most, it merely lacked scientific form, while in substance it covers the matter as fully and as intelligently as if the words had been answered.

The other portion of the exception, to the effect that the instruction, as given, was not directly applicable to the situation as presented upon the trial, is of no avail to the appellant. It is true that no witness was impeached by contradiction of statements made by him, not under oath. The instruction, therefore, while not strictly applicable to the facts, must necessarily have been entirely harmless to the appellant.

[**13**] As before pointed out, the defendant was convicted of involuntary manslaughter. There was added ' to the verdict the following language : ''We respectfully beg the mercy of the court.'' This recommendation was authorized by section 4447, Code 1915, which is as follows: .

"In the trial of the criminal cases, punishment within the limits prescribed by law shall be assessed by the court in its discretion; but juries may, in their discretion, upon return of a verdict of guilty in any criminal case, recommend defend-. ant to the clemency of the court, and any such recommendation shall receive due consideration by the court."

The penalty for manslaughter is provided by section 1461, Code 1915, and is imprisonment in the state penitentiary for a period of time not less than 1 year nor more than 10 years. The court after receiving this verdict sentenced the appellant to confinement in the penitentiary at hard labor for a period of not less than 9 years nor more than 10 years. Judge Mechem evidently believed that the woman was intentionally shot outside the house at the door, in the heat of passion. Therefore, after considering the jury's recommendation to clemency, as we must assume, he declined to follow the recommendation.

The appellant argues that the statute, above quoted, gives to the defendant in a criminal case a substantial, legal right which the trial court may not ignore. In other words, appellant would have the court hold that the statute requires the court, upon such recommendation from the jury, to make some substantial concession to the defendant by way of moderation in the sentence. Just what measure should be applied in such cases is not suggested by counsel, if, indeed, any rule could be formulated upon such subject.

The question is whether the Legislature, when it enacted the statute referred to, intended that the jury's , recommendation should be binding upon the court, or whether it should be merely advisory to the court for the purpose of moving his discretion by laying before

him the opinion of the 12 jurors that the defendant should be leniently dealt with.

We have examined all of the comparatively few cases from the other jurisdictions, but find them of no value, as the statutes upon which they are based are entirely different from ours in their provisions. The cases are collected in 16 C. J. § 2601, and in a note to State v. Arata, 56 Wash. 185, 105 Pac. 227, 21 Ann. Cas. 242.

In determining the proper interpretation of this statute, reference to previous legislation on the subject may be helpful. Previous to 1891 the juries assessed the punishment in criminal cases, except when otherwise specially provided by statute. This practice originated in the Kearney Code, and was carried forward into the Complications of 1865 (chapter 57, § 22) and 1884 (section 2468) in the following form:

"All issues of fact, in a criminal case, shall be tried by a jury, who shall assess the punishment in their verdict, and the court shall render a judgment accordingy."

In 1891 the Legislature departed from the former system, and by section 10 of chapter 80 of the Laws of 1891 enacted section 4447, Code 1915, above quoted. It thus appears that the Legislature in its wisdom adopted an entirely new system, intrusting to district judges the power to impose sentence upon criminal defendants, within certain prescribed statutory limits. The Legislature, by the language used, however, did not see fit, evidently, to strip the juries absolutely of all power and control over the sentence of defendant convicted of crime. It reserved to the juries still a certain measure of power in this regard, and the question is to determine just what the nature and extent of that power is from the language used. It is evident that the Legislature did not intend to leave with the juries an absolute power to control the discretion of the court in fixing sentences. Had it so intended it would have used language to the effect that in case of a recommendation to clemency certain definite consequences should flow therefrom. Nothing of the kind appears in the statute. On the other

hand, it appears that the Legislature, taking into consideration the previous history of the state, during which the juries had been the sole judges of the amount of punishment to be inflicted, deemed it expedient and proper that they might still advise the court as to their opinion, in a general way, upon the subject of the sentence of the prisoner. The statute did not authorize the jury to suggest any particular term of sentence, but merely authorized the jury to lay before the court the fact that they thought clemency might properly be shown. The final discretion and determination as to what the sentence should be was left undisturbed with the court. No other conclusion can be reached from the words used in the statute. Nor can any other workable interpretation be arrived at. If the discretion to determine the sentence rests with the court, as it evidently does, who shall say whether the court yielded enough to satisfy the suggestion of the jury in the recommendation to mercy. Endless controversy would arise in each case if the discretion of the trial judge is to be subjected to review by this court. When the district judge, sitting as he does and hearing the evidence, exercises his best judgment and discretion as to a suitable sentence, after having noted and given due consideration to the opinion of the trial jury expressed in their verdict, the defendant has received all that he is entitled to under this statute.

We therefore hold that the provision of the statute authorizing a recommendation of clemency by the jury is merely for the purpose of allowing the jury to give the trial judge the benefit of their opinion as to whether clemency should be extended, and is not intended to in any manner control the ultimate discretion of the trial judge in fixing the sentence.

It follows from all the foregoing that there is no error in the judgment of the district court, and that it should be affirmed; and it is so ordered.

ROBERTS and RAYNOLDS, J.J., concur.