No. 19,376.

ERNEST JOSEPH MILLS *v.* PEOPLE OF THE
STATE OF COLORADO.
(362 P. [2d] 152)

Decided May 15, 1961.   Rehearing denied June 12, 1961.

Mr. JOSEPH A. MYERS, Mr. V. G. SEAVY, JR., for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. J. F. BRAUER, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

DEFENDANT was charged by information with the premeditated murder of his wife, Mary Constance Mills, also known as Mary Martinez Mills, on May 14, 1957. He was convicted of the crime of second degree murder and sentenced to from thirty-eight years to life in the state penitentiary. He seeks review by writ of error.

This matter is before this court for the second time. On a previous writ of error a conviction of first degree murder was reversed. *Mills v. People* (1959), 139 Colo. 397, 339 P. (2d) 998.

It is unnecessary to set forth the sordid details of the crime of which defendant was convicted. Suffice it to say that the evidence offered by the people was circumstantial and for that reason the jury was not permitted to consider the death penalty. The defendant did not testify in his own behalf.

Sixteen separate assignments of error are urged for reversal.

Defendant first contends that the trial court committed prejudicial error in instructing the jury on the crime of first degree murder. The Colorado statutory definition of murder is contained in C.R.S. '53, 40-2-3:

"Malice shall be implied when no considerable provocation appears, or when all circumstances of the killing show an abandoned and malignant heart. All murder which shall be perpetrated by means of poison or lying

in wait, torture, or any kind of wilful, deliberate and premeditated killing; or which is committed in the perpetration or attempt to perpetrate any arson, rape, robbery, mayhem or burglary; or perpetrated from a deliberate and premeditated design, unlawfully and maliciously, to effect the death of any human being other than him who is killed; or perpetrated by any act greatly dangerous to the lives of others and indicating a depraved mind, regardless of human life, shall be deemed murder of the first degree, and all other kinds of murder shall be deemed murder of the second degree. The jury before which any person indicted for murder shall be tried, shall, if it find such person guilty thereof, designate by its verdict whether it be murder of the first or second degree, and if murder of the first degree, the jury shall in its verdict fix the penalty to be suffered by the person so convicted, either at imprisonment for life at hard labor in the penitentiary, or at death; and the court shall thereupon give sentence accordingly.

" * * * provided, that * * *; nor shall any person suffer the death penalty who shall have been convicted on circumstantial evidence alone."

In the present case testimony indicated that the cause of death was an incisional wound of the neck (caused by a sharp cutting instrument) and exsanguination. The evidence against defendant included several exhibits including a knife and a pair of bloody scissors found in the apartment. This record indicates that considering the circumstances of the crime a verdict of murder in the first degree would have been supported by the evidence.

The fact that the state's evidence was entirely circumstantial does not preclude an instruction on first degree murder where the necessary elements of that crime are present in the record. "Intent to kill and premeditation may be inferred from the intentional use of a deadly weapon in a deadly manner." *1 Wharton's Criminal Evidence,* §131, p. 245.

The statute on murder, quoted in part above, expressly sanctions this presumption in view of its provision that no person convicted of first degree murder on the basis of circumstantial evidence alone shall suffer the death penalty. In the present case the trial judge correctly informed the jury that if it found the defendant guilty of first degree murder it must fix the penalty at life imprisonment since the evidence was wholly circumstantial.

Under the circumstances it cannot be said that the giving of a first degree instruction constitutes reversible error. In *Walker v. People* (1952), 126 Colo. 135, 156, 248 P. (2d) 287, we said:

"Furthermore, the entire matter relating to circumstantial evidence, and its effect in preventing the jury from fixing a death penalty, relates to first degree murder, and cannot in any respect be relevant to a verdict of guilty of the second degree. If, then, it be conceded solely for the purpose of argument, that the instructions were erroneous, nevertheless, the defendant having been convicted of second degree murder was not entitled to complain."

In accord: 26 *American Jurisprudence*, §557, p. 546; *State v. Carabajal* (1920), 26 N.M. 384, 193 Pac. 406, 17 A.L.R. 1098; *Armijo v. People* (1956), 134 Colo. 344, 304 P. (2d) 633. In order to avoid any misunderstanding, we feel it necessary to point out that generally it is improper to instruct on a degree of homicide not sustained by the evidence. *Tate v. People* (1952), 125 Colo. 527, 247 P. (2d) 665. In the present case there was adequate evidence to warrant the instructions given.

Defendant further contends that the trial court committed prejudicial error in admitting photographs taken of the deceased, when found, together with bloody articles of clothing belonging to her and bloody towels and similar items found with the body. It has heretofore been held that such is not necessarily error. In *King v. People* (1930), 87 Colo. 11, 285 Pac. 157 (cited with ap-

proval in *Martinez v. People* (1951), 124 Colo. 170, 177, 235 P. (2d) 810), it was said:

"Any evidence, oral or visual, disclosing the facts and circumstances surrounding the commission of a crime is admissible. The fact that such evidence shows that the offense was particularly atrocious and might arouse the righteous indignation of the jurors does not render the same inadmissible."

The evidence in dispute here comes within the permissible limits stated in *King,* supra.

■ Defendant also argues that the trial court committed reversible error in instructing on the doctrine of "flight." It is well established that evidence of a defendant's flight from the scene of the alleged crime is admissible. Here the defendant asserts he left the State of Colorado on May 17th after picking up his pay check from his place of employment. His wife was last seen alive by other persons on May 14th. Defendant stayed in his apartment at least some of the time from the 14th to the 17th — just how long the record does not disclose. What is shown, however, is that his wife came home on the afternoon of the 14th and that he came home at noon of that day; and that during the time until he left by train on the 17th to visit his mother in Missouri he told his neighbors conflicting stories as to his wife's whereabouts and failed to tell anyone, even his employer or landlord, that he was going away. It was only after he had been gone several days that his landlady entered his apartment and found Mrs. Mills' body stuffed in the refrigerator which was set at 40 degrees temperature. The evidence as to defendant's activities in Missouri was conflicting, sufficient to throw doubt on the purpose of his journey there.

Where there is no evidence of flight an instruction thereon is, of course, not proper. Under the facts here, however, the instruction was proper. The defendant's conduct in this regard was a fact to be considered by the jury together with all the other evidence.

In *1 Wharton's Criminal Evidence,* §205, p. 420, the rule is set forth as:

"It is not essential to the admissibility of evidence of flight that it be shown that the defendant knew he was wanted for the offense.

"Flight is admissible without regard to the legality of the defendant's arrest, or whether other evidence of guilt is direct or circumstantial, and is not limited to homicide prosecutions. It is immaterial that the defendant did not flee immediately after the commission of the crime, although the existence of a delay is a factor in determining whether the defendant had fled.

" * * *

"The question as to why the defendant left the community and remained away from it is a question for the jury."

Following submission of the case to the jury the trial court, counsel and the defendant were advised approximately twenty-five hours later that the jury was "hopelessly deadlocked." The bailiff was then instructed to inform the jury that there was no response to its statement. Two hours later, the jury being still deadlocked, the court, over the objection of defense counsel, read the jury "Additional Instruction No. 1," commonly called the standard "third degree" instruction. The substance of this is that the jurors in the minority should try to consider whether they are fairly viewing the evidence if the majority believe a certain way; that they should realize the case has to be determined and that it was their duty to decide the case if they could conscientiously do so based on the evidence and the instructions. Shortly thereafter the jury again advised it was deadlocked, but the court directed that the jurors have supper and then reconvene. The trial court also told the defendant and counsel that if the jury did not agree by 9 p.m. (the instruction being given at 5:07 p.m.) he would then discharge the jury. At 8:50 p.m. the jury arrived at its verdict.

Defendant urges that giving Additional Instruction No. 1 was error "for the reason that under the circumstances existing the action taken by the court constituted an abuse of discretion and did coerce the jury into the compromise verdict returned."

We cannot agree. The giving of this instruction is within the sound discretion of the trial court, and when used properly as we deem it was here, it has been upheld. *Olguin v. People* (1946), 115 Colo. 147, 170 P. (2d) 285.

We have considered the other assignments of error and conclude that they are without merit. Much of defendant's criticism of the people's evidence and to the exhibits received, such as the ice pan and the belt with defendant's fingerprints thereon, goes to the weight rather than to the admissibility of such evidence. Such matters were for the jury to determine under the court's instructions. The evidence must be viewed in its entirety, and when so viewed we find no merit in the challenges in question. In this regard we call attention to the following quotation:

"A case of circumstantial evidence * * * implies the weaving of a fabric of known facts, which, often infinitesimal or immaterial, or even prejudicial when considered alone, become important only as they are tied to others, and when so tied lead to inevitable conclusions as to facts in issue." *Militello v. People* (1934), 95 Colo. 519, 522, 37 P. (2d) 527.

This record discloses that the defendant received a full and fair trial under an able judge.

The judgment is affirmed.

MR. JUSTICE MCWILLIAMS not participating.