No. 20695.

JAMES EUGENE MOGAN *v.* THE PEOPLE OF THE STATE OF COLORADO.

(402 P.2d 928)

Decided June 14, 1965.

WILLIAM H. NELSON, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, AUREL M. KELLY, Special Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE SCHAUER delivered the opinion of the Court.

ON June 25, 1962, an information was filed in the trial court charging plaintiff in error, hereinafter referred to as the defendant, in separate counts with (1) premeditated murder, and (2) aggravated robbery.

Through court-appointed counsel defendant entered pleas of not guilty, and not guilty by reason of insanity to each count.

A trial by jury commenced on September 17, 1962. The case was submitted to the jury at 9:03 P.M., on September 19, 1962. At 11:55 P.M., less than three hours after the jury had received the case for deliberation, the court summoned the defendant, counsel and the jury into the court room and inquired of the jury if they were having any difficulty understanding the instructions:

"THE COURT: Has the jury elected a foreman?

"A JUROR: Sir?

"THE COURT: Who is the foreman? Is the jury having any difficulty understanding the instructions?

"A JUROR: No, Your Honor.

"THE COURT: All right, if you have no problem with the instructions, then I would like to read to the jury a form of instruction that has been approved by the Supreme Court."

Whereupon the court immediately read to the jury what is commonly known as the "third degree instruction," with the preliminary remark as follows:

"* * * Under circumstances of this kind, this instruction has been approved to be given to a jury. So, I will read it to you."

The instruction thus given has frequently been approved by this court as to form and as proper under appropriate circumstances. In this case, the court had advised neither the district attorney nor defense counsel that this instruction was to be given. It made no inquiry of the jury whether it was in disagreement as to the facts in the case or whether it was deadlocked. The jury had made no request for advice, information or assistance. The court gave the instruction on its own motion, attempting to justify its action on the ground that the form of the instruction had, under similar circumstances, been approved by the Supreme Court. The

jury was immediately returned to its jury room for further deliberations.

Defendant's counsel, at his earliest opportunity, preserved his record by protesting the action of the court on the grounds that the jury had been out for less than three hours in a case involving a possible death penalty and had not had sufficient time to go through the evidence and to digest the original instructions (twenty-two in number). The court paid no heed to counsel's protestation and declared an immediate recess.

The jury again retired and at 12:55 A.M., on September 20, 1962, and after fifty-one minutes of additional deliberation, the court was informed that the jury had reached a verdict. The court then, with agreement of counsel, decided to receive the verdict; but when the jury was returned to the court room the court had changed its mind and addressed the jury as follows:

"THE COURT: * * *, prior to being advised by the Clerk that you had apparently reached a verdict, the attorneys and the Court had met and decided that since it was then, almost 1:00, we would bring the jury in and tell them to go to bed and resume their deliberation in the morning because it isn't the intention of the Court, or anyone else involved in this case, *as serious as it is,* to place the jury under any compulsion or coercion to arrive at an early verdict, which might not involve a thorough and complete consideration of all the instructions in the evidence, by each juror.

"And we know you have had three hard days here, and we held a night session last night, and your accommodations in the Court House may not have been the most comfortable. And in view of that fact, and the lateness of the hour, *and the fact that the Court perhaps was precipitant in giving you the additional instruction at midnight.* And to insure that any verdict that you deliver will be the result of thorough and complete consideration, "You will be taken to the sleeping

quarters, here, and will spend another night here and resume your deliberation in the morning. *And if you have, at this time, arrived at any verdicts, you can reconsider them* in the morning and then deliver them into court." (Emphasis supplied.)

The court then recessed at 1:23 A.M., and the jury recommenced its deliberations the following morning, at 10:00 A.M. Immediately thereafter, the jury requested that the additional instruction be reread. The court thereupon directed that the instruction be typed and delivered to the jury, following which the jury promptly returned verdicts, finding the defendant sane, guilty of aggravated robbery, and guilty of murder in the first degree with the penalty of death. A motion for a new trial was duly filed, heard and overruled, and judgment was entered on the verdicts.

Defendant's arguments in support of his plea for reversal may be summarized under two headings, as follows:

1. That the trial court erred in giving the additional instruction, in view of the fact that the jury had been deliberating less than three hours; that it had had no difficulty in understanding the original instructions; that there had been no indication that the jury was in disagreement as to the facts or that it had been deadlocked, and that the jury had not requested advice, information or assistance.

2. That the trial court erred in refusing to receive the verdicts of the jury when such verdicts were offered.

We will consider briefly the task and duty of this jury during its deliberations. In addition to evaluating the voluminous testimony of expert and lay witnesses, extending over a period of fifteen and one-half hours, it was required to study many exhibits. For example, defendant's Exhibit 1 had been received in evidence. This was a complete and voluminous file of the Colorado Psychopathic Hospital, where defendant had been

confined on three separate occasions. When this evidence was offered, the court had remarked:

"They [the jury] can't individually read that inside of twenty-four hours. * * * it would take one person about two hours to read that, or someone is going to have to read that to them verbatim, but each juror can't do that in the court room or we will be here forever."

In addition, the jury had to consider extensive reports made during defendant's confinement in Mount Airy Hospital and Fort Logan and evaluate the oral testimony of the expert medical witnesses in connection with these exhibits. Moreover, the jury was obliged to consider the original twenty-two instructions and discuss and agree upon their verdicts — all within a period of three hours before the additional instruction was given. It is also noteworthy that the jury was confronted, among other things, with the responsibility to comprehend the difficult definition and application of legal insanity.

This court has on several occasions considered the time element before giving the "special" instruction. In these cases the giving of the additional instruction was approved, and sometimes was approved only with reluctance. On these several occasions, the court evidently considered the time lapse between the time the jury commenced its deliberations and the time the instruction was given to be sufficient when applied to the seriousness of the charge involved. To some extent, an acceptable pattern is indicated by the following cases:

In *Mills v. People*, 146 Colo. 457, 362 P.2d 152 (1961), language is found as follows:

"Following submission of the case to the jury the trial court, counsel and the defendant were advised approximately twenty-five hours later that the jury was 'hopelessly deadlocked.' * * *."

Two hours later, the jury still being deadlocked, the "third degree" instruction was given.

In *Olguin v. People,* 115 Colo. 147, 170 P.2d 285 (1946), the case was given to the jury at 10:00 P.M. At 5:10 P.M. the following day the court received word to the effect that the jury was unable to agree. Thereafter the court gave the third degree instruction. This was a case of forcible rape with no death penalty involved.

In *Leech v. People,* 112 Colo. 120, 146 P.2d 346 (1944), the defendant was charged with theft of an automobile. This court approved the giving of the additional instruction after the jury had been out approximately twenty-four hours.

In *Holland v. People,* 30 Colo. 94, 69 Pac. 519 (1902), involving a charge of larceny, the court used similar language to that in the case at bar after determining that the jury could not agree on the facts and after twenty-four hours had elapsed.

In *Boegel v. People,* 95 Colo. 319, 35 P.2d 855 (1934), the defendant was prosecuted for statutory rape, and the additional instruction was given after the jury had been deliberating twenty-three hours.

*Sevilla v. The People,* 65 Colo. 437, 177 Pac. 135 (1918), is a case in which defendant stood charged with first degree murder wherein the jury had been deliberating for twenty hours before the additional instruction was given. The question of legal sanity was not an issue in the case.

██ Pertinent language is found in *Peterson v. Rawalt,* 95 Colo. 368, 36 P.2d 465 (1934), in which a claim for wages was asserted and the jury had deliberated for about twenty hours. There, it was said:

"* * * Ordinarily a trial judge is within his rightful province when he urges agreement upon a jury at loggerheads with itself. But this process has its limits. * * * it is a specially delicate matter to importune unanimity when there is no indication of confusion or misapprehension in the minds of the jurors on the law of the case. * * *."

The *Mills* case, *supra,* is the only Colorado case we have found involving a penalty as severe as in the instant case, and the jury was permitted to deliberate for twenty-two hours more than in this case, before the additional instruction was given.

The question of the "time lapse" between the time of the submission of the case to the jury and the time this instruction is given depends upon the circumstances of the particular case and the nature of the crime charged, and it is within the sound discretion of the trial court as to the time the instruction is given, if at all.

In the *Holland* case, *supra,* this court made the following pertinent suggestion:

"* * * The judiciary, in the proper discharge of their duties, and the functions devolving upon them, should exercise patience in hearing and determining all matters involving the rights and liberties of those charged with the commission of crime. * * *."

In the instant case, with the lapse of less than three hours, it is apparent that the trial judge did not heed this admonition, and showed impatience rather than patience.

In view of the quantum of evidence presented in this case it cannot be said that two hours and fifty-two minutes represent unusually prolonged deliberations. There is little doubt that the giving of the additional instruction, under the circumstances then existing, interfered with the free and unbiased deliberation of the jurors. It is indeed a delicate matter to thus importune unanimity. We find that the trial court erred in acting precipitously by giving the instruction referred to after less than three hours had elapsed after the case had been submitted to the jury, and in so doing we hold that it abused its discretion.

Our views herein expressed regarding argument number one are dispositive of the issues in the case; thus, a discussion of argument number two is unnecessary.

For the reasons above stated, the judgment of the trial court is reversed and the cause remanded for a new trial.