456 P.2d 784

The STATE of Idaho, Plaintiff-Respondent,

v.

Telesforo JIMINEZ, Defendant-Appellant.

No. 10283.

Supreme Court of Idaho.

June 30, 1969.

Larson & Smith, Nampa, for appellant.

Robert Robson, Atty. Gen., State of Idaho, Alan M. Schwartzman, Special Asst. Atty. Gen., Boise, C. Robert Yost, Canyon County Pros. Atty., Caldwell, for respondent.

McQUADE, Justice.

Appellant, Telesforo Jiminez, was charged with the crime of second degree murder

in the death of Andres Gonzales. The case was tried before Hon. Robert B. Dunlap and a twelve-man jury. The jury found the appellant guilty for the crime of voluntary manslaughter. A judgment of conviction was entered on the 24th day of May, 1968. Appellant was sentenced to serve an indeterminate period of time not to exceed ten years in the Idaho State Penitentiary. This appeal is from the verdict and judgment.

Appellant Jiminez and the deceased Gonzales were good friends, having known each other from childhood. Both Mr. Jiminez and Mr. Gonzales were born in Charlotte, Texas. Appellant and the deceased were musicians and had, on many occasions, played together in the same band. Appellant and the deceased had lived in Nampa approximately a year and a half. At the time of the shooting incident, Mr. Jiminez was thirty-six years of age, married, and the father of fourteen children, seven of whom were living with him.

On the evening of December 8, 1967, Telesforo Jiminez had gone to the DeRail Tavern, in Nampa, for the purpose of playing his accordian. Appellant was also to discuss with the deceased the possibility of furnishing music at the DeRail the following evening. Appellant arrived at the DeRail at approximately 8:00 p.m. The deceased had arrived a little while before. Since arrangements had not been made that evening for a guitar player, the appellant did not play his accordian as he had previously intended.

Appellant stayed at the DeRail until about 11:00 p. m. At this point, the testimony of the bartenders and appellant diverges. The bartenders testified that shortly after appellant left the bar with Katherine Gammel and his father-in-law, Alfredo Neagle, the decedent, Andres Gonzales, also left the bar saying that he had to drive his wife to work. A few minutes later Andres Gonzales came hurriedly back into the bar saying that appellant wanted to fight with him. Appellant then came back into the bar and hit Gonzales in the back of the neck. Appellant and Gonzales scuffled and were separated. One bartender threw appellant out, while the other helped to restrain Gonzales. Appellant taunted Gonzales from outside the bar, and finally, after the bartenders had thought Gonzales had calmed down, Gonzales went out to fight appellant. There was a good fistfight going when appellant pulled the .32 caliber pistol from somewhere on his person and shot Gonzales in the chest at a distance of about six feet and as Gonzales was off balance near the fender of a parked truck.

Appellant himself testified that Gonzales had been angry because he could not play the drums that night with appellant even though the guitar player had not arrived. Gonzales was further angered because appellant left with his accordion that night even though he was to play the next night with Gonzales. When appellant left the bar, Gonzales followed him out and maligned and then returned to the bar. Appellant therefore decided that he would not play the next night with Gonzales and also returned to the bar to tell the proprietor that the deal was off. Angered by what Gonzales was saying as he came into the bar, appellant struck Gonzales. Then the scuffling occurred as the bartenders testified. Appellant returned to his car and was about to leave when Gonzales came out of the bar, pulled appellant from the car, and threw him to the ground. The fight began. Appellant's pistol began to slip from his sock where he kept it and the two began to fight over it. Appellant stated that, as he shoved Gonzales away from him against the truck, the pistol accidentally discharged.

Appellant Jiminez originally made six assignments of error. Of these, appellant abandoned at argument the sixth assignment of error relating to the district court's jury Instruction No. 31. We deal first with appellant's third and fourth assignments of error relating to jury Instruction No. 12 on the definition of murder and Instruction No. 18 concerning manslaugh-

ter. Appellant argues that the court erred in giving that portion of Instruction No. 12 italicized below:

> "Malice may be presumed from the intentional use of a deadly weapon in a manner likely to produce death, not from the mere circumstance that a deadly weapon is used, because a man may use it in self defense or because of a sudden heat or passion caused by a provocation sufficient to make the passion irresistable, but it is the unlawful use of a deadly weapon whereby life make be taken, from which the law presumes malice.
>
> *"In a case of homicide by use of a deadly weapon, the law casts upon the person committing the homicide the burden of repelling the presumption of malice,* unless the other evidence in the case shows that the killing was done without malice."

Appellant contends that this portion of the instruction failed to take account of exculpatory elements of proof introduced as part of the case of the prosecution. Thus there should have been no presumption of malice at all, and to cast on defendant the "burden of repelling" such a presumption had the effect of shifting the burden of persuasion to defendant. In essence, appellant contends that this instruction was erroneous on the question of the existence of malice as an element of second degree murder.

■ As argued by the State, however, assuming without deciding that this instruction was erroneous, it cannot be said that appellant was actually prejudiced because of it. This is true because the jury returned a verdict of guilty of voluntary manslaughter, a crime which the jury was instructed contained no malice. Thus, the verdict of the jury plainly indicates that the jury found no malice at all. Had the jury found appellant guilty of second degree murder, then indeed actual prejudice

resulting from such an instruction might be shown. That was the basis for the reversal of the conviction of second degree murder in State v. Copenbarger.[1] Here, however, any error in the murder instruction was effectively cured by the verdict finding appellant guilty of the lesser crime of voluntary manslaughter.[2]

Appellant contends further, however, that Instruction No. 18 also failed properly to state the law on manslaughter. He assigns error to that portion of the instruction italicized below:

> "Upon a trial for murder, the commission of the homicide by the defendant being proved, *the burden of proving circumstances mitigating the offense to manslaughter, or that justify it, devolves upon him unless the proof in the case tends to show that the crime committed amounts only to manslaughter, or that the defendant's act was justifiable or excusable. While the burden of proving the circumstances in mitigation or justification of the homicide rests with the defendant,* he is not required to establish such circumstances by a preponderance of the evidence, but to establish the circumstances to such an extent that the jury, after considering the whole evidence in the case, have a reasonable doubt as to his guilt. It can make no difference whether this reasonable doubt is the result of evidence on the part of the defendant tending to show circumstances of mitigation, or that justify or excuse the killing, or from other evidence coming from him or the prosecution."

Appellant argues that this portion of the instruction, given in the terms of I.C. § 19-2112, misled the jury in that the jury would fail to understand that the burden of proof referred to meant only the burden of going forward with the evidence and not the burden of persuasion. In

---

1. 52 Idaho 441, 16 P.2d 383 (1932).

2. See Armijo v. People, 134 Colo. 344, 304 P.2d 633 at 636–637 (1956); State v. Carabajal, 26 N.M. 384, 193 P. 406 at 409 (1920).

this respect, appellant relies upon *Copenbarger, supra,* and other cases.[3]

■ It should be noted that all of the cases cited by appellant involved convictions of murder. In the *Cornett* and *Foster* cases, the trial courts had given instructions in terms of their respective statutes which were similar to I.C. § 19–2112. In these two cases, the murder convictions were reversed partly because no explanation whatever was given relative to the meaning of the phrase, "burden of proving." In the case at bar, however, the jury was instructed that the defendant need only show mitigating circumstances to such an extent that a reasonable doubt arises as to guilt. The *Copenbarger* and *Deloney* cases do appear to hold that, when elements of justification or excuse appear in the prosecution's case, it will be reversible error in murder convictions to give any instruction in terms of I.C. § 19–2112 even if the court attempts to explain the phrase, "burden of proving." Since the jury returned a verdict of guilty of voluntary manslaughter, however, any prejudicial effect was avoided.

Appellant also argues that the court erred in giving Instruction No. 29:

"You are instructed that while the burden of proving self defense is upon the defendant in this case, it is not necessary that he prove that he acted in self defense by a preponderance of the evidence. All that is necessary is that he introduce evidence or establish circumstances to such an extent that you, the jury, after considering all the evidence in the case, have a reasonable doubt as to whether the defendant acted in self defense, and you are further instructed that after examining all of the evidence introduced in this case you are conscious of having a reasonable doubt as to whether the defendant in firing the shot which resulted in the death of the said

Andres M. Gonzales acted in self defense, then and in that event you should find the defendant 'not guilty.'"

Appellant simply states that this placed the burden of proving self-defense upon him.

■ We find that the terms of this instruction indicate only that the defendant must produce enough evidence to create a reasonable doubt in the mind of the jury that the killing resulted from an act of self-defense. The instruction clearly indicates that the defendant need not show self-defense by a preponderance of the evidence.

■ Given Instruction No. 29 above was substantially similar to defendant's requested Instruction No. 3:

"The defendant is not required to establish circumstances in mitigation or that justify or excuse, his act, either beyond a reasonable doubt or by a preponderance of the evidence, but is only bound to prove such circumstances as any fact is to be proved, and if the proof creates a reasonable doubt of the defendant's guilt, he is entitled to an acquittal."

This requested instruction recognizes that the defendant must establish elements of mitigation, justification or excuse to such an extent that a reasonable doubt of guilt arises in the mind of the jury. It is not reversible error to give an instruction substantially the same as that requested by the defendant.[4] As to these three substantial questions, we find no grounds for a reversal of the conviction of voluntary manslaughter.

It is necessary to discuss two procedural matters which were briefed and argued by the parties. Appellant contends that the court erred in refusing to issue a certificate of probable cause for appeal under I.C. § 19–2809 and in refusing to admit appellant

---

3.  People v. Deloney, 41 Cal.2d 832, 264 P.2d 532 (1953); People v. Cornett, 33 Cal.2d 33, 198 P.2d 877 (1948); State v. Foster, 44 Haw. 403, 354 P.2d 960 (1960).

4.  State v. Spencer, 74 Idaho 173, 258 P.2d 1147 (1953); State v. Rutten, 73 Idaho 25, 245 P.2d 778 (1952).

to bail pending the outcome of the appeal under I.C. § 19–2905(2).

Appellant was charged by information of the crime of murder in the second degree, a crime not punishable by death.[5] Therefore, I.C. § 19–2903, which provides that capital offenses are not bailable, could not operate automatically to prevent the admission of appellant to bail. I.C. § 19–2905 provides:

> *"Admittance to bail after conviction.*— After conviction of an offense not punishable with death, a defendant who has appealed may be admitted to bail:
>
> 1. As a matter of right, when the appeal is from a judgment imposing a fine only.
>
> 2. As a matter of discretion in all other cases."

I.C. § 19–2906 provides in pertinent part:

> *"Nature of bail.*—If the offense is bailable, the defendant may be admitted to bail * * *
>
> \* \* \* \* \* \*
>
> After conviction, and upon an appeal:
>
> \* \* \* \* \* \*
>
> "2. If judgment of imprisonment has been given, [on the undertaking of bail,] that he will surrender himself in execution of the judgment, upon its being affirmed or modified, or upon the appeal being dismissed; or that in case the judgment be reversed, and that the cause be remanded for a new trial, that he will appear in the court to which said cause may be remanded, and submit himself to the orders and process thereof."

Of course, it is a prerequisite to the operation of the bail statutes that execution of a judgment of conviction be stayed upon appeal. In this respect, I.C. § 19–2809 provides:

> *"Stay of execution.*—An appeal to the Supreme Court from a judgment of con-

viction stays the execution of the judgment in all capital cases, and in all other cases, upon filing with the clerk of the court in which the conviction was had a certificate of the judge of such court, or of a justice of the Supreme Court, that, in his opinion, there is probable cause for the appeal, but not otherwise."

In the instant case, the only record of proceedings upon appellant's motions for bail, a certificate of probable cause for appeal, and a stay of execution of judgment consists of the minutes of the district court for August 9, 1968, which indicate that the court denied the motions after hearing counsel for appellant, and the order of the court of August 19, 1968, which stated in pertinent part that "* * * upon hearing argument from the Defendant and upon examination of the records and presentence investigation, it is felt * * * that the Defendant is a menace to society and should not therefore be released pending the outcome of his appeal * * *."

■ Turning first to the certificate of probable cause for appeal, the Idaho cases hold that the statutory phrase, "probable cause for the appeal,"

> "* * * does not mean that there is probable cause for reversal of the judgment, or that reversible errors were committed. It only means that there is presented a case where appellant has assigned, or may assign, grounds on which he expects to rely which are open to doubt, or which are debatable, or over which rational, reasonable or honest discussions may arise; that is, a legal contention that is not clearly and palpably frivolous and vexatious."[6]

The assignments of error in the present case raised certain issues over which honest debate could arise. They were not "clearly and palpably frivolous and vexa-

---

5. I.C. § 18–4004.

6. State v. Iverson, 76 Idaho 117, 119, 278 P.2d 205, 206 (1954); In re France, 38 Idaho 627, 630, 224 P. 433, 434 (1924); In re Neil, 12 Idaho 749, 87 P. 881 (1906).

 

tious." In a time of change in the criminal law, it will be the rare case which presents no rational grounds for appeal, and we believe the denial of the certificate in this case was error.[7]

Turning next to the question of bail, the district court's determination of whether or not a convicted defendant shall be admitted to bail pending appeal is a determination separate from the decision to grant or deny a certificate of probable cause for appeal. The grant or denial of bail involves different considerations.[8] The statute makes this decision an occasion for the exercise of the sound legal discretion of the district court.[9] These cases, however, are not entirely consistent with respect to the standard which this Court should apply to determine whether bail was improperly denied. The district court should consider (1) whether the defendant is prosecuting his appeal in good faith, (2) the personal situation of the defendant, (3) the nature and circumstances of the offense, (4) the defendant's past record, (5) the possibility that the defendant will commit additional offenses, and (6) the possibility that the defendant will attempt to escape.[10]

In the *Iverson* case, the court stated that there must be "some sufficient reason" for refusing bail. In the *France* case, one sufficient reason for refusing bail was stated to be "* * * if [defendant's] record is such that it may be reasonably anticipated that he will continue a career of crime until he is actually incarcerated in prison."[11]

It was discretionary with the trial court in granting or refusing bail to the defendant and will not be disturbed on ap-

peal in absence of an abuse of that discretion.

McFADDEN, C. J., DONALDSON and SPEAR, JJ., and BELLWOOD, District Judge, concur.

---

7. Cf. A.B.A. Minimum Standards Relating to Criminal Appeals § 1.1 (Tentative Draft 1969).

8. *Iverson*, n. 6, *supra*, 76 Idaho at 120, 206, 278 P.2d 205; *Neil*, n. 6, *supra*, 12 Idaho at 754, 882, 87 P. 881.

9. State v. Dunn, 91 Idaho 870, 877, 434 P.2d 88, 95 (1967); *Iverson*, n. 6, *supra*; In re Bolitho, 51 Idaho 302, 6 P.2d 855 (1931); *France*, n. 6, *supra*; State

v. Waterman, 36 Idaho 259, 272, 210 P. 208, 212 (1922); In re Schriber, 19 Idaho 531, 114 P. 29, 37 L.R.A.,N.S., 693 (1911); *Neil*, n. 6, *supra*.

10. See Ryan, The Last Days of Bail, 58 J.Crim.L.Criminology & Pol.Sci. 542 at 548 (1967).

11. *France*, n. 6, *supra*, 38 Idaho at 632, 435, 224 P. at 435.